## PAGE *v.* HODGE.

The plaintiff's servant, in charge of his mowing-machine and horses at-
tached, abandoned them to engage in an unlawful personal combat
with the defendant. The horses, being frightened by the noise of the
encounter, ran away and injured the machine. *Held,* that the plain-
tiff was affected with the negligence of his servant in leaving the
horses, and could not recover for the damage to the machine.

CASE. Facts found by a referee. The plaintiff is a farmer, and
at the time of the occurrences stated below was securing his annual
hay crop. Harvey Page, his servant, by his direction, was driving
his horses, attached to his mowing-machine, from his field to his
house. As the team was passing from the field into the highway,
the defendant, with a scythe upon his shoulder, came along, trav-
elling in the direction the team must take to reach the plaintiff's
house. Unfriendly feeling existed between the defendant and
Harvey Page. The latter, on seeing the defendant, called out to
him in such a manner as, considering the state of feeling between
them, was calculated to bring on a quarrel. The defendant replied,
and each applied to the other such epithets as he deemed most in-
sulting. After the team was in the highway, and the defendant
had threatened to give the plaintiff's servant a thrashing, swinging
his scythe in a threatening manner, and when both parties to the
quarrel were screaming at each other, the plaintiff's servant stopped
the horses, laid down the reins, jumped off the machine, and start-
ed towards the defendant, who continued advancing towards Har-
vey, and closed with him very near the machine. A hand-to-hand
encounter ensued. The horses, frightened by the noise, and find-
ing themselves without a driver, ran, and the machine was dam-
aged to the amount of thirty dollars. The plaintiff's servant had
no reasonable ground to apprehend serious injury to himself from
the assault of the defendant if he remained on his seat, and he was
not exercising ordinary care and prudence in leaving his team un-
attended when he and the defendant were screaming at the top of
their voices in the immediate vicinity of the horses, but was guilty
of negligence in leaving them under the circumstances. The tu-
mult, before Harvey left his seat and after (contributed to about
equally by the parties to the affray), was sufficient to frighten and
cause to run horses of ordinary gentleness attached to a mowing-
machine and unattended in the highway, but not sufficient to cause
horses of ordinary gentleness, or of character like the plaintiff's
horses, to break away from a driver of ordinary skill and strength.

The plaintiff had done nothing to incite ill-feeling between the
defendant and his servant; he had no knowledge that the defend-
ant was in the vicinity; was not sufficiently near the scene of the
affray to prevent or mitigate it; and was without fault in the selec-

tion of a servant or otherwise, unless the acts of his servant, as herein set forth, are in law his acts.

Up to the time the plaintiff's servant left his seat, a man of ordinary prudence would not have expected that the horses would take fright from the affray and damage the machine by running away; but from the moment the servant left his seat, a man of ordinary prudence would have expected that the horses would take fright from the affray, and damage the machine by running away.

The court ordered judgment for the plaintiff, and the defendant excepted.

*Lane & Dole*, for the plaintiff. The master is responsible only for the acts of his servant which are done in prosecuting the business for which he was specially employed by the master. 2 Hill. Torts 437. In *Wilson* v. *Peverly*, 2 N. H. 548, the principle upon which the master's liability rests, and to what limited, seems to be clearly and briefly stated. The servant here was in the actual service of the master while he was moving homeward with his team. He had no occasion, as a servant, to stop. He did not stop, as a servant, to perform any duty, apparent or real, for the master. His duty as a servant required him to keep moving on home; but he did stop,—and what for, and why? He stopped for a combat with the defendant, by reason of ill-will, and the threats and defiance of the defendant just made. The noise, which was made by both about equally, frightened the horses, and they ran and broke the machine. These facts show that the master was in no way responsible for that which happened during this criminal conduct between the parties, but that either or both are liable to him for any damages he suffered by reason of their joint acts. The servant abandoned his master's service at the instant he stopped the team for a fight. The position, that the servant was within the scope of his master's business up to the time he had left his seat on the machine, cannot be correct. Stopping his team, by a farm laborer, to engage in a breach of the peace, cannot be considered in the line of his employment; and to seek to charge a master for what resulted by such conduct of a servant would require some positive evidence of the master's direct authority to that end. It was a matter entirely disconnected with his business. Whether the servant was exercising ordinary care in leaving the horses is not material, because he had abandoned his master's service by the first act of stopping the team for a purpose which was unlawful, as well as against his duty to his master.

*Spalter & Fox* and *Batchelder & Faulkner*, for the defendant.

BLODGETT, J. In effect, the referee has found, as matter of fact, not only that the plaintiff's servant was guilty of negligence, but that the injury complained of would not have happened had it not

been for such negligence. These findings preclude a recovery in this case.

By intrusting his team to the servant for the purpose of driving it home, the' plaintiff put it in the servant's power to manage the team negligently, and must be deemed to have assumed the risk of the servant's negligence in the execution of the trust so committed to him. And, moreover, as in contemplation of the law he who does a thing by the agency of another person does it himself, the case further stands, in respect of the servant's negligent act in leaving the team unhitched and unattended in the public highway, precisely as it would if that act had been done by the plaintiff himself. This being so, it is immaterial that the conduct of the defendant may have contributed to the injury. A party cannot be heard to complain because others have failed to exercise a higher degree of care than he himself has exercised. Between two wrong-doers, the law will leave the consequences where they have chanced to fall.

Divested of extraneous matter, the case is this: The plaintiff intrusted his property to a servant, who failed to discharge his duty in protecting it, whereby the plaintiff has sustained an injury. The servant would seem to be liable to respond in damages, but if not, the plaintiff is plainly remediless. Exceptions sustained.

*Judgment for the defendant on the report.*

CARPENTER, J., did not sit: the others concurred.