Sullivan,
June 27, 1908.

## STATE v. PEOPLE'S NATIONAL BANK.

## STATE v. CLAREMONT NATIONAL BANK.

## STATE v. KEENE NATIONAL BANK.

A deposit of funds in the savings department of a national bank, upon an agreement for repayment with interest at a stipulated rate, creates the relation of debtor and creditor between the depositor and the bank, and not that of trustee and *cestui que trust*.

The receipt of interest-bearing deposits by a national bank, unaccompanied by any representation that the institution is authorized to do, and is doing, an investment business like that of a savings bank chartered and controlled by the laws of the state, is not in contravention of chapter 112, Laws 1907.

When it is claimed that a statute of this state deals with a subject concerning which the congress of the United States has sole power to legislate, a criminal proceeding thereunder will ordinarily be sustained in order that the question at issue may be determined by the federal courts.

INFORMATIONS, alleging that the defendants are violating the provisions of chapter 112, Laws 1907. Transferred from the November term, 1907, of the superior court by *Chamberlin*, J. The cases are substantially alike, and the facts stated in the first case may be deemed to apply to the others. The defendant's demurrer to the information, on the ground that the statute did not apply to national banks, was overruled subject to exception. Thereupon the bank filed an answer, alleging as follows:

"The defendant says that it is a national banking association, duly organized and established under the laws of the United States, . . . that its place of business is in Claremont, . . . and that in the conduct of its lawful business it did," on November 1, 1907, "receive deposits of money upon which it agreed to pay interest to the depositors ; that upon receiving said deposits, it issued to each depositor a pass-book, bearing upon its cover the following words: 'Interest-bearing deposits People's National Bank, Claremont, N. H. In account with John Doe.'

"That said book contained among others the following regulations: '1 Deposits or withdrawals may be made at any time. 2. Interest at the rate of three per cent per annum will be credited to depositors January 1st and July 1st, and this interest will be at once added to the principal, and will draw interest same as

other deposits, the interest thus being compounded twice a year. 9. The bank shall have the right to return any or all deposits in whole or in part, or to decline to receive deposits in its savings department, whenever it may deem proper.'

"That the form suggested in said book for the withdrawal of money upon an order contains the following words: 'People's National Bank, interest-bearing deposits.'

"That on said first day of November, 1907, it caused to be printed in the National Eagle, a newspaper published and circulated in said Claremont, an advertisement containing the following words: 'A general banking business transacted. Three per cent interest on all time deposits.'

"And the defendant further answering denies each and every allegation in said information, except as the same are herein admitted, and says that the business transacted as above set forth in this answer was done in accordance with and under authority of the laws of the United States, . . . and specifically denies that its said business carried on as aforesaid was in violation of any valid law or statute of the state of New Hampshire."

To this answer the state demurred. The demurrer was sustained, and the defendant excepted.

*Edwin G. Eastman*, attorney-general, for the state.

*Streeter & Hollis*, for the defendants.

WALKER, J. The statute (Laws 1907, *c.* 112) under which the prosecution was brought is as follows:

"Section 1. The words savings bank as used in this act shall include only institutions for savings incorporated as such in this state.

"Sect. 2. No person, copartnership, incorporation, or association, except savings banks incorporated in this state, and trust companies, loan and trust companies, loan and banking companies thereto empowered by their charters granted by this state, shall hereafter make use of any sign at the place where its business is transacted having thereon any name, or other word or words, indicating that such place or office is the place or office of a savings bank. Nor shall such corporation, person, copartnership, or association make use of or circulate any written or printed or partly written and partly printed paper whatever, having thereon any name, or other word or words, indicating that such business is the business of a savings bank; nor shall any such person, copartnership, association, or incorporation receive deposits and transact business in the way or manner of a savings bank, or in

such a way or manner as to lead the public to believe, or, in the opinion of the bank commissioners, might lead the public to believe, that its business is that of a savings bank.

" Sect. 3. The bank commissioners shall have the authority to examine the accounts, books, and papers of any corporation, person, copartnership, or association which makes a business of receiving money on deposit, in order to ascertain whether such person, copartnership, corporation, or association has violated any provision of this act; and any person, copartnership, incorporation, or association violating any provision of this act shall forfeit to this state one hundred dollars a day for every day or part thereof during which such violation continues. Any violation of the provisions of this act shall forthwith be reported by the bank commissioners to the attorney-general. The said forfeiture may be recovered by an information or other appropriate proceeding brought in the superior court in the name of the attorney-general. Upon such information or other proceeding the court may issue an injunction restraining such person, copartnership, incorporation, or association from further prosecution of its business within this state during the pendency of such proceeding or for all time, and may make such other order or decree as equity and justice may require."

It is claimed that the statute prohibits the defendants from doing the kind of business partially described in the answers, because, it is urged, they " receive deposits and transact business in the way or manner of a savings bank." This contention makes it necessary to give a construction to the language of the statute. Evidently, the phrase quoted cannot be given a literal meaning. As a national bank is not a savings bank, it cannot transact the same kind of business that a savings bank is incorporated to do. If it has a savings department, it does not receive deposits to be invested in specified securities under the supervision of the bank commissioners; it does not hold the deposits upon a trust creating the relation of trustee and *cestui que trust*, but upon a contract creating the relation of debtor and creditor.

" Although a bank may be called a savings bank, if it is really a stockholders' bank, where the capital is owned by the shareholders, the name will amount to nothing (unless it produces actual harm to a depositor by misleading him without his fault); and in such a bank a deposit creates the relation of debtor and creditor, and the depositor has no lien or trust in the bonds in which the money he deposits is invested, as is the case in a savings bank, even though the bank officers promise to hold the bonds for his benefit; such a lien can only be created by mortgage or pledge." 2 Morse Banks, *s.* 618. To give this clause a literal

meaning would make it inoperative and senseless; and the fact that it would thus become absurd makes it necessary to seek the legislative intention embodied in the words used, by adopting a more liberal interpretation.

The claim of the state is, that this language was inserted in the statute to prevent corporations, not specially authorized by the legislature, from doing a savings bank business or an investment business substantially similar to the business of a savings bank, and that the receiving of money by a national bank from its customers for investment, upon which it agrees to pay them a certain rate of interest, is the doing of a savings bank business which the legislature intended to prohibit. This argument obviously can only be supported by a finding that the legislature intended to prevent the customers of a national bank from loaning their money to the bank under contracts creating the relation of debtor and creditor. In a general sense, it may be true that the bank in such a case receives deposits for investment upon which the depositors receive interest, and that the business thus done is practically in many respects a savings bank business. But in legal effect it is not a savings bank business. *Mitchell* v. *Beckman*, 64 Cal. 117, 122. The depositors in a savings bank " do not personally loan the money deposited, but entrust it to the bank, as their trustee or agent, to be kept, invested, managed, and paid out, according to the provisions of the charter and by-laws of the institution. If there is a profit, they receive it; if there is a loss, they share it according to the amount of their deposits." *Hall* v. *Paris*, 59 N. H. 71, 73; *Cogswell* v. *Bank*, 59 N. H. 43; *Bank Commissioners* v. *Banking Co.*, 74 N. H. 292; *Mann* v. *Carter*, 74 N. H. 345, 347, 348. But such does not appear to be the effect of the investment business undertaken by the defendants. The contracts with their depositors, as set up in the answers and admitted by the demurrers, provide for the receipt of deposits of money upon which each bank agrees to pay interest to the depositors at a certain rate per cent. The interest received by the depositors is not in a legal sense dependent upon the success of the banks in making paying investments. So far as appears, the banks are bound to pay the stipulated interest, as well as the amounts of the so-called deposits, as legal debts which they owe to the patrons of their savings departments. The relation created is that of debtor and creditor, not that of a trust or bailment. The interest agreed to be paid on the money received in this way by the bank is not in the nature of a dividend of profits realized from the successful management of a savings bank. The depositors' security, as a matter of law, does not depend upon the character of the investments made by the bank, but upon the general solvency of the institution.

The defendants therefore are not doing a savings bank business, unless every person who receives his neighbors' money upon a contract to repay it with interest at a stipulated rate can be deemed to be engaged in business of that character within the meaning of the statute in question; for the statute includes persons as well as corporations. That the statute was intended to have that effect, and to seriously interfere with and abridge the freedom of contract in this respect, is a proposition that cannot be seriously entertained, in view of " the natural, essential, and inherent rights," which " all men " have, of " acquiring, possessing, and protecting property." Bill of Rights, *art.* 2; *State* v. *Ramseyer*, 73 N. H. 31, 32–34. If such an intention might be found from the words of the statute, the unconstitutional effect of it would be strong evidence tending to show that the legislature in enacting it did not have that intention with reference to natural persons; and if not with reference to them, the inference would be that the same language was not intended to have a different meaning when applied to corporations.

The position of the state is an apt illustration of the construction of legislative language which disregards the general intent apparent from a consideration of the entire statute in its practical application. "It is a very familiar rule in the interpretation of statutes, that all parts of the act must be considered together, and such construction given to it as will best answer the intention of the makers. To accomplish this object, in some cases the letter of the statute may be restrained by an equitable construction; in others enlarged; and sometimes the construction may be even contrary to the letter." *Pierce* v. *Emery*, 32 N. H. 484, 508. "What is within the legally proved intention of the legislature is within the statute, though not within the letter; and what is within the letter, but not within the intention, is not within the statute." *Opinion of the Justices*, 66 N. H. 629, 655; *Thompson* v. *Esty*, 69 N. H. 55, 75; *Stanyan* v. *Peterborough*, 69 N. H. 372, 373; *State* v. *Railroad*, 70 N. H. 421, 431.

Unless it was intended to create a monopoly in favor of saving banks and similar institutions, incorporated under the laws of this state, in the business of receiving money on contracts generally for investment and accumulation, no reason is apparent why legislation having that effect should have been deemed desirable. An examination of the statute reveals its controlling purpose to be the prevention of deception, fraud, and false representations by persons and corporations in assuming to invest funds deposited with or entrusted to them, under contracts purporting to give the depositors the same advantages and protection afforded by savings banks under the laws of this state. No such person or corporation shall

"make use of any sign at the place where its business is transacted having thereon any name, or other word or words, indicating that such place or office is the place or office of a savings bank"; nor shall it " make use of or circulate any written or printed or partly written and partly printed paper whatever, having thereon any name, or other word or words, indicating that such business is the business of a savings bank." It is also prohibited from transacting business " in such a manner as to lead the public to believe . . . that its business is that of a savings bank." Section 1 provides that " the words savings bank as used in this act shall include only institutions for savings incorporated as such in this state." These provisions plainly show that it was the purpose of the legislature to prevent the obtaining of the money of depositors upon a false representation that the party receiving it is authorized to do, and is doing, an investment business like that of a savings bank " incorporated as such in this state." In the provisions quoted no intention is expressed, and none can reasonably be inferred, that the general business of investment by banking institutions of deposits received from their customers, upon which they agree to pay interest, should be prohibited; indeed, the natural inference is that the legality of such business was recognized, and that only the method by which it was done should be regulated and somewhat restricted in the interest of fair dealing. Such seems to be the general purpose of the statute, which is of much significance in ascertaining the meaning of special phrases. *Barker* v. *Warren*, 46 N. H. 124. And the provision that other persons or corporations shall not " transact business in the way or manner of a savings bank" must be construed in harmony with this general purpose. If the idea had been to prohibit the doing of a business substantially or practically similar to that of a locally incorporated savings bank, more fortunate language would doubtless have been used to express that idea. Circumlocution rendering careful construction of language necessary is not ordinarily employed in penal statutes whose purpose is to prohibit the doing of specific acts. If the object is to make a certain act a crime, the prohibition would hardly be inferred from language limiting " the way or manner " of doing it. This particular phrase, when read in connection with the remaining language of the statute and in view of the general purpose of the act, refers to the method of doing what may be termed a savings bank business; it was intended to prohibit the adoption and use of methods of business so similar to those of local savings banks as to create the belief on the part of depositors that they were receiving the protective security which is afforded to depositors in savings banks chartered and controlled by the laws of this state. *People*

v. *Trust Co.*, 139 N. Y. 185. If this construction renders the statute to some extent redundant, that not uncommon defect in legislative expression does not affect or change the evident intention of the legislature found from a consideration of all the competent evidence.

That the statute thus construed was intended to apply to national banks cannot admit of doubt. The language is amply sufficient to include such corporations, and there is little in the practical working of the act that shows it was not intended to have that effect. This result presents the question, whether the legislature had the power or jurisdiction to legislate on this subject with reference to national banks chartered under the federal law—a point raised by the demurrer to the information. As this is a question of much importance and perhaps of considerable difficulty (*National Bank* v. *Commonwealth*, 9 Wall. 353; *McClellan* v. *Chipman*, 164 U. S. 347; *Easton* v. *Iowa*, 188 U. S. 220), it seems advisable under the circumstances to overrule the exception to the order overruling the demurrer, in order that an opportunity may be afforded for an authoritative decision of the question by the federal courts, if the case is not otherwise disposed of at the trial. *State* v. *Collins*, 67 N. H. 540; *State* v. *Collins*, 70 N. H. 218.

*The exception to the order overruling the demurrer to the information is overruled, and the exception to the order sustaining the demurrer to the answer is sustained.*

All concurred.