### HENRY D. ROBINSON *v.* BOSTON & MAINE RAILROAD.

*Hurley & Connor (Mr. Connor* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Bingham (Mr. Bingham* orally), for the defendant.

ALLEN, J. The plaintiff, intending to take a train for Concord at Laconia, arrived at the Laconia station immediately after the arrival of the train. He entered upon the station platform near its easterly end. The train was on a track at his right side and its rear end was about twenty-five feet ahead of him as he proceeded towards it. He undertook to board the last car of the train at its rear entrance on the side towards the station platform. The car was equipped with vestibule doors and the door at this entrance was closed. A vestibule door when closed is practically flush with the side of the car. Its bottom is level with the car platform, and a trap is dropped to cover the space above the steps from the car platform to the door. There is thus an area open from the outside above the steps and below the level of the car platform.

The plaintiff stepped up on the lower step of the car, took hold of a grabiron at the side of the door, and continued for one-half to three-quarters of a minute until the train started in a vain attempt to open

the door. In his position his body leaned outwards from the door, while his feet, resting on the lower step, were under it. The door at the bottom could be shaken and moved slightly inwards, but above at the knob it held firm. The plaintiff persisted in his effort to open the door after the train started. When he first thought of stepping off, he feared injury in doing so and made up his mind to ride in his position to the next station. Some cars on a side track ahead of him appeared to give him insufficient clearance, and he then dropped to the ground and was hurt. At that time the train had traveled about 350 feet with steadily increasing speed.

The plaintiff was unfamiliar with cars equipped with vestibule doors. He expected to be able to open the door, thinking it was stuck, and also thinking that someone might open it from the inside.

Upon the issue of the defendant's negligence, it may not be charged with fault for the plaintiff's undertaking to enter the train as he did. There was nothing in the appearance of the closed door that invited effort to open it. The knob was not within convenient reach of one standing on the station platform, and the door was an obstruction to one climbing the steps. With the door closed it was not reasonably to be expected that one would seek entrance by undertaking to open it. Until the train started the door on the same side at the front end of the car was open and a trainman stood on the station platform near it. The view was clear and open for the entire length of the car and any observation would have shown that only the entrance at the front end was in use at the time.

It was the defendant's claim that the plaintiff did not step up on the car until the train had started, and the conductor and brakeman both testified that they looked towards the rear end of the train just before it did start without seeing anyone and that there was nothing to shut off the view. But if the plaintiff was on the steps as he testified and the trainmen looked in his direction, the jury might infer that they saw him. Negligence of the defendant in starting the train while the plaintiff was trying to enter and in permitting him to ride on it in the position he was in, might therefore be found.

As to the plaintiff's negligence, from the time he attempted to board the train until it had gone far enough to gather speed, he gave no thought to his safety. His attention was wholly directed to gaining entrance into the car. One does not use due care for his safety who does not think at all about it. *Cronin* v. *Company*, 75 N. H. 319; *Sevigny* v. *Company*, 81 N. H. 311, 313; *Collette* v. *Railroad*, 83 N. H. 210, 217. The duty to give attention to one's safety in a position of

obvious danger is imposed because the ordinary man gives that attention. A plaintiff may not say that he was not required to give attention because of other considerations. It is not careful conduct to pay no heed to the demands of safety. If heed is given, the question of proper conduct is then judged by external standards. *Sevigny* v. *Company, supra,* 313.

The plaintiff had ample time to think. If an emergency may properly limit considerations of safety, it does not excuse all thoughtlessness. So far as time to think is given, the duty to think is not dispensed with, however much the nature of the emergency may affect thought. Neither the plaintiff's purpose in taking the train nor his expectation that the door might be opened justified the distraction of all attention to his safety.

Safety was secured by stepping off the train before it started or before it attained speed after it started. While the plaintiff testified that the train started suddenly, it must have gained speed gradually. For some distance after starting the comparative safety of leaving the train with that as the train got under way is obvious. In view of the evident and definite means of safety anyone in the plaintiff's position, giving any heed to the danger, would not have incurred it by remaining on the train until speed was attained.

If the plaintiff's half minute or more of effort to open the door before the train started did not tell him the effort would be unsuccessful, it also did not tell him it would probably be of avail. His expectation of the door opening did not reasonably entitle him to await its opening. He had no sufficient reason to think it would be opened before the train's speed made his position dangerous, if he had thought about it. There was no promise of safety in remaining on the train. Although he thought the door was stuck, there was only uncertainty whether he would be able to open it. And it was likewise uncertain how soon someone might open the door from the inside.

There was no emergency of sufficient seriousness to make it careful to remain on the train. The plaintiff had an appointment at Concord for medical treatment, but its postponement meant no consequences important enough to make it reasonable and prudent to incur the danger in order to keep the appointment.

Any thought at all would have told the plaintiff that it was unsafe for him to hold his position with the train in motion, and he knew that it would start at any moment. As soon as it started, if he had used any care, he would have alighted as the only safe course to take. Not until the train was well under way did he awaken to a sense of his

danger. It was then too late to escape it, but it was his own fault that he incurred it. Plenty of time and opportunity to secure safety had been given, and the exercise of any care during that time would have saved him from injury.

As in *Gahagan* v. *Railroad,* 70 N. H. 441, 446, "He not only did nothing to protect himself, but was in fact acting without attention to his situation. He was thoughtless and careless when his duty to the railroad as well as to himself required him to be thoughtful and careful." As in *Cronin* v. *Company, supra,* he used no care with reference to his position, which he knew, if he had thought about it, was attended with the danger which caused his injury. And as in *Bonnin* v. *Railroad,* 77 N. H. 559, 562, 563, "The evidence shows conclusively that the plaintiff could have escaped injury by the exercise of ordinary care."

The plaintiff's negligence was concurrent. If he was seen in his position on the train by the trainmen, it was before the train started. His position then did not indicate that he failed to recognize the danger of remaining in it too long. The danger of remaining in his position for any length of time after the train started was too apparent to warrant the inference that the trainmen were given notice that he did not realize it and have it in mind. His position showed that he would more probably alight seasonably than that he would not. While negligence in taking the chance that he might not step off in season may be found, notice that he probably would not by reason of ignorance or inattention may not be. Evidence of the defendant's superior knowledge, as an essential of the last chance rule, thus fails.

The plaintiff being thus negligent, the defendant's motion should have been granted.

*Judgment for the defendant.*

BRANCH, J., did not sit: the others concurred.