Hillsborough,
Nov. 1, 1932.

ARTHUR V. DIMOCK *v.* PAUL LUSSIER.

MASSACHUSETTS ANTI-SALOON LEAGUE *v.* SAME.

BERNADETTE DEMERS *v.* SAME.

BERNADETTE DEMERS *v.* ARTHUR V. DIMOCK.

*Hurley & Connor* (*Mr. Connor* orally), for Bernadette Demers.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for Arthur V. Dimock and the Massachusetts Anti-Saloon League.

*Timothy F. O'Connor* and *Myer Saidel* (*Mr. Saidel* orally), for Paul Lussier.

MARBLE, J.   The accident occurred at the intersection of Willow and Silver streets in Manchester on August 4, 1929.   Willow street runs approximately north and south, and is intersected obliquely by Silver street.   At the time of the accident Lussier was proceeding southward on Willow street, and Dimock was driving north.   The testimony concerning the details of the collision is highly conflicting.

On the one hand, there is evidence from which it could be found that Lussier, traveling very slowly and signaling both with his motor horn and with his hand, turned to the left to enter Silver street, which extends from Willow street in a southeasterly course; that he saw Dimock approaching from the opposite direction, about three hundred feet distant, and reasonably assumed that he had ample time to complete the turn in safety; that Dimock had an unobstructed view of the intersection yet continued to advance rapidly, and crashed into Lussier's car, which was then nearly across the street, without the slightest warning.

On the other hand, Dimock's testimony tended to prove that his speed did not at any time exceed twenty-five miles an hour and that he blew his horn when within twenty-five feet of the intersection.   He stated that "without any warning of any kind" Lussier's car "shot out of the traffic" directly in front of him; that he immediately applied his brakes, sounded his horn again, and pulled his car to the right; that he had but a second in which to act, and that there was nothing he could have done that he didn't do to avoid the collision.

At the trial it was conceded "by counsel for both defendants that Miss Demers was in no way at fault."

Dimock was an employee of the Massachusetts Anti-Saloon League and at the time of the accident was acting within the scope of his employment. The League in its action against Lussier for damage to its automobile is therefore chargeable with Dimock's conduct. *Page* v. *Hodge,* 63 N. H. 610.

The questions presented by the plaintiff's motion for a directed verdict in the case of *Demers* v. *Lussier* have not been argued, and the exception to the denial of that motion is understood to be waived. The motions of Dimock, Lussier, and the Anti-Saloon League for directed verdicts were properly denied. *L'Esperance* v. *Sherburne,* 85 N. H. 103, 104.

Obviously the evidence in favor of Dimock and the Anti-Saloon League was not of such overwhelming weight as to require the granting of the motions to set the verdicts aside. *Bennett* v. *Larose,* 82 N. H. 443; *Morrell* v. *Gobeil,* 84 N. H. 150.

It is claimed that certain alleged inconsistencies in the testimony of Lussier and Bernadette Demers bring the cases within the rule of *Harlow* v. *Leclair,* 82 N. H. 506. But this rule is manifestly inapplicable where apparent contradictions are reconciled or absolute contradictions adequately explained. And such could be found to be the situation here. Lussier did not of course profess to state distances with absolute accuracy. Therefore the fact that Dimock must have advanced at a highly improbable rate of speed, if the estimate of three hundred feet was exact, did not destroy the force of Lussier's testimony on that point altogether.

Dimock and the Anti-Saloon League rely upon their exceptions to the following portions of the charge:

"The rights of the parties at this intersection were equal; neither had any superior right over the other. Mr. Lussier had as much right to turn to the left into Silver street as Dimock had to proceed north on Willow street. In the same way Dimock has as much right to proceed straight ahead as Lussier did to turn; their positions are equal there. So, if you find in regard to Mr. Lussier that when he turned into Silver street he gave proper warning when he was about to make the turn, and at that time Mr. Dimock appeared to him to be so far away that he had time to make the turn in safety, then his action in making the turn could not be regarded as negligent. . . .

"I think the case might be summed up in this way: If you find this accident happened as Lussier says it did, then nobody ought to have

any verdict against him, the verdicts would be for Lussier in all cases. If it happened the way Dimock says it did, then there must be no verdict against Dimock in any case. But you may not find it so simple as that; you may think the two stories are both in part true, that both men are partly to blame. In that case, Miss Demers would have a verdict against both of them, and neither Dimock or Lussier would have a verdict against each other. But Miss Demers, as I said, is entitled to a verdict against both, if both were to blame, or against the one that you find to be at fault, if both are not."

After exceptions had been taken, the presiding justice gave the following additional instructions:

" . . . I think I said to you that if when Lussier made the turn, Mr. Dimock appeared to him to be far enough away so it was safe, then he would not be negligent. That might not be quite so, if Lussier was heedless or reckless or careless, thinking that things were safe when he ought not to, he would be negligent. If, when Lussier made the turn he was justified in thinking that Dimock was so far away that he could make the turn in safety, then he would not be negligent in making the turn. . . . .

"I told you that Miss Demers was entitled to recover from either one or both of the defendants, and the suggestion is made that that might be thought to mean that it was immaterial which one of the defendants was charged, that is, you might charge them possibly, without regard to their liability, thinking that it did not make much difference. Of course, you would not understand it that way. Miss Demers can recover from Mr. Lussier only if he is at fault for the accident. She can recover from Dimock if he is to blame for the accident, but only in that case. She can recover from both of them if they are both at fault."

The charge did not, as counsel contend, set up a subjective rather than an objective standard by which to determine the legality of Lussier's conduct, for the jury were plainly told that Lussier's belief that Dimock was far enough away to permit him to turn in safety must be justified.

No specific exception was taken to the additional instruction on this subject. Counsel merely said, in answer to the court's inquiry if this covered the point, that Lussier's conduct "should be determined by all the circumstances." But the court had already instructed the jury that "the test of carelessness or fault or blame or negligence, which the law sets up, is the inquiry whether the party whose conduct is being considered exercised such care as the average

prudent man would exercise under the same circumstances." And again: "By reasonable care is meant such care as the average reasonable man would use under the same circumstances. . . . We are expected to conduct ourselves with such care as men of average prudence would use under the same circumstances."

Given its proper context, the instruction was unexceptionable.

However, it is now suggested that P. L., c. 90, s. 3, applies to the situation, and that it was Lussier's duty to grant the right of way at the point of intersection to Dimock, who, once Lussier had commenced to turn, would be approaching from his right. See *Boyd* v. *Close*, 82 Colo. 150, 152; *Barry* v. *Leiss*, 109 Conn. 484, 487; *Denney* v. *Power*, 159 Wash. 465, 470, 471. Without considering the applicability of the statute to the controverted facts, it is sufficient to state that since this question was not raised at the trial it cannot be relied upon here. *Gosselin* v. *Lemay*, 85 N. H. 13, 17, 18; *Duval* v. *Insurance Co.*, 82 N. H. 543, 545, and cases cited; *Richard* v. *Company*, 79 N. H. 380, 381, 387.

Before summarizing the instructions, the court had outlined with particularity the position of all parties. It is difficult to understand how the summary could have discredited Dimock's testimony, as counsel argue, for the instruction was hardly more than the conventional statement that the party who had persuaded the jury that his claims and contentions were true was entitled to a verdict.

But it is suggested that the summary invaded the province of the jury, since, even if the accident happened "as Lussier says it did," it was still for the jury to determine the reasonableness of Lussier's and of Dimock's conduct. The summary is to be read in connection with the instructions which it summarizes, and the word "says" is there used synonymously with "contends." The section of the charge referred to is as follows: "He says that he was driving in a proper manner, and says that all of the blame for this accident must be regarded as belonging to Mr. Dimock; he says that Dimock was driving at an excessive rate of speed, a speed in excess of the statutory provision, and that the accident was caused by his excessive speed; he also says that Mr. Dimock was at fault because he failed to turn into Silver street soon enough or far enough, in order to avoid this accident." Clearly if the jury believed all this to be true, Lussier could not be liable.

The presiding justice had a right to treat the exceptions to the charge as implied requests for further instructions and to correct the charge to meet the objections understood to be urged. *Tuttle* v.

*Dodge*, 80 N. H. 304, 316. This he endeavored to do, and no error is perceived in the charge as thus amended.

Lussier was asked to state from his observation what Dimock could "have done that he didn't do" to avoid the accident. He answered, subject to exception, that Dimock might have turned to the right or sounded his horn. This testimony was not improper. *Reed* v. *Company*, 84 N. H. 156, 161. Preliminary questions as to qualification were for the trial court. *Eames* v. *Corporation*, 85 N. H. 379, 385.

It was also within the discretion of the trial court to permit a witness to testify that Dimock was traveling at a high rate of speed when he passed an intersection eight or nine hundred feet south of the point of collision. *Lyman* v. *Railroad*, 66 N. H. 200, 204; 15-16 Huddy, Automobile Law (9th *ed.*), *p.* 351.

The order in each case is

*Judgment on the verdict.*

Branch, J., did not sit: the others concurred.