Rockingham,
June 5, 1934.

HERMAN A. NIEMI, *Adm'r Estate of* GEORGE L. NIEMI,

*v.*

BOSTON & MAINE RAILROAD.

HERMAN A. NIEMI, *Adm'r, Estate of* RUDOLPH H. NIEMI, *v.* SAME.

HERMAN A. NIEMI, *Adm'r, Estate of* ELLEN L. NIEMI, *v.* SAME.

AIMÉ ROY, *Adm'r, Estate of* AGNES ROY, *v.* SAME.

*Everett J. Galloway* and *Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the plaintiffs.

*Hughes & Burns (Mr. Burns* orally), for the defendant.

ALLEN, J. The driver's negligence is a required finding. As the plaintiffs' car proceeded towards the crossing, the train approached it from the left. When about three rods from the nearest rail over the crossing the driver looked to the left. The train was then three hundred to three hundred fifty feet from the crossing. The evidence that the train was clearly within range of his sight appears definitely conclusive. The jury took a view and it is assumed that the photographs in evidence show the situation and conditions at the crossing. Their integrity has not been questioned or the statement that they were taken very soon after the collision. The driver's testimony that the train could not be seen at the point where he looked by reason of

intervening obstructions must be rejected as untrue. *Collette* v. *Railroad*, 83 N. H. 210, 217; *Moreau* v. *Insurance Co.*, 84 N. H. 422, 425. The obstructions to which he testified of a rail fence and bank at the side of the road were not high enough to shut off a view of the train. His testimony that the fence was buried to its top with snow he modified after being shown the photographs which disproved it. It was broad daylight and the air was clear. While it is incorrectly stated in the brief for the plaintiffs that the driver stopped the car when he looked, he testified to a speed very close to six or seven miles an hour. He had favorable opportunity to make a reliable observation.

He either saw the train or took such an inadequate glance in its direction that he did not notice it. Any careful look would have disclosed it. If he saw the train, his subsequent conduct was careless. The car was under control and could be stopped within ten feet. He had four or five seconds in which to stop or turn the car to the right. If he did not see the train, it was because he was careless in the manner he looked for it. He looked to see if a train was coming but used no care to make his look effective. The precaution of looking demanded that some care be used in taking the look. Assuming that he relied upon the crossing signals and the train's whistle to warn him and that none of these warnings were given, he did not place full reliance upon them. He looked up "to see if a train, if there was any trains coming." It was a habit he had as a driver and another reason he looked was because the crossing signals were inactive. Taking anticipatory care not to depend altogether upon the expected warnings, he took no care to make his conduct in pursuance of his anticipation of any service and value. Some care was required (*Robinson* v. *Railroad*, 85 N. H. 474, 475, 476, and cases cited), and his testimony concludes him. *Harlow* v. *Leclair*, 82 N. H. 506.

The owner's negligence follows from that of the driver, as a matter of law. If she was not directly negligent, her chargeability for his negligence places her for all legal purposes in the same position as though she herself were the driver. *Dimock* v. *Lussier*, 86 N. H. 54, 56.

The intestates in three of the actions were their children, and these actions are solely for their benefit. ". . . the damages recovered, less the expenses of recovery, shall belong and be distributed" to specified classes of distributees, who here are the parents as the heirs-at-law. P. L., c. 302, s. 14. Although the pain suffered by a decedent in consequence of his injury and the expense to his estate caused by

the injury are among the elements for which damages are allowed, recovery therefor is a part of the compensation of the distributees. *Davis* v. *Herbert*, 78 N. H. 179; *Ghilain* v. *Couture*, 84 N. H. 48, 53; *Cogswell* v. *Railroad*, 68 N. H. 192.

It was held in *Warren* v. *Railway*, 70 N. H. 352, that the distributee's negligence as a cause of the decedent's death was no defence to an action for the joint or concurring negligence of another. The decision rests upon two grounds. One is that the distributee's fault is not imputable to the decedent. This is the well established rule prevailing here and no discussion of its merit is invited. The other ground is that the distributee is not a party in interest. This ground seems so doubtful in its validity and the result is so opposed to normal legal principles that there is occasion to reconsider the case in this respect and examine the soundness of the reasoning by which the result is reached. The conclusion of the court was that as between two persons wrongfully causing a death, if one is the sole distributee, he may receive the full recovery from the other, and if there are innocent distributees, he may share the recovery with them with no account taken of his fault, however great it may be. The common-law policies that one may not have compensation for an injury of which his fault is causal and that contribution or liability between wrongdoers is not to be enforced are held to be replaced in respect to the statute by a contrary legislative policy found to be disclosed only by the description of the action as one of survival and by the procedural provision for its maintenance in the administrator's name.

While the case has been consistently followed since it was decided in 1900, citation of it has been almost uniformly in upholding the rule against imputed negligence. See *Carney* v. *Railway*, 72 N. H. 364, 368; *Williams* v. *Railroad*, 82 N. H. 253, 254; *Doyle* v. *Lacroix*, 85 N. H. 247, 248. However, it is given discussion on the point of contributory fault in *Strout Farm Agency* v. *Hosford*, 81 N. H. 507, 508, with approval of the ground that a distributee is not a party in interest. His relation to the administrator is considered the same as that of creditors and heirs in an action between the administrator and others.

This position seems seriously questionable, in view of the distributee's rights as declared in *Cogswell* v. *Railroad*, 68 N. H. 192, 194, and in view of the definition of a party in interest as stated in *Carlton* v. *Patterson*, 29 N. H. 580, 586, and in *Hunt* v. *Haven*, 52 N. H. 162, 169, cited in *Morin* v. *Insurance Co.*, 85 N. H. 471, 472. By the *Carlton* case, "the party who really carries on the controversy under a party who has no concern in it, and is merely a nominal party, or

under one who is fully indemnified" is the party in interest. In the *Hunt* case substantially the same test is applied. One is a party in interest who has the right to "control the proceedings." In the *Cogswell* case it is held that the distributees, upon indemnifying the administrator, may commence and prosecute the action in his name and engage their own counsel. Their description in the opinion as parties in interest seems undeniably within the definition of such parties given in the *Carlton* and *Hunt* cases.

In *Hinman* v. *Director-General*, 79 N. H. 518, it was held that an administrator may institute the action at his own instance when it is not shown that there are any distributees. It is to be supported on the ground that he has authority to save the rights of possible distributees, and not on any theory that he has a substantial interest in the maintenance of the action. The case also held that there could be no trial of the action until distributees were found. It may well be that the survival of the cause of action and the statutory arrangement for the action to be brought in the administrator's name imply some fiduciary duty that he take action for the distributees. But it is no more than an imposed agency which they may control. Clearly, they may assume full charge of the action, may settle directly with the defendant, and may disaffirm the administrator's unauthorized institution or prosecution of the action. Having no right to act except in their behalf, he is under their direction. If in some limited respects he is more than a nominal party, it remains that they are "the real parties in interest." In this aspect of control they are in the position of assignees of the cause of action. The statute, first permitting an action for personal injury to be brought after the injured person's death, then operates to transfer from the latter's estate to them the beneficial interest in the action.

In contrast, heirs and legatees are not parties in interest, in the legal sense of the term, in a proceeding by or against the representative of the estate, any more than creditors. The representative's authority is regulated by statute, and in general he is under judicial control instead of being under the direction of the heirs and legatees. Except in cases where they in fact conduct litigation in his name, they are not parties to it through him, but are properly regarded as strangers.

It is true that the cause of action for injury resulting in death is for a wrong to the decedent. Death does not defeat the cause. If the injury causes death instantly, yet it is inflicted upon a living person. But the cause is not an asset of the decedent's estate, to be inventoried

and accounted for by the administrator in the judicial settlement of his trust, unless the action for the wrong has been commenced by the decedent himself. *Piper* v. *Railroad*, 75 N. H. 435; *West* v. *Railroad*, 81 N. H. 522. The survival of the cause is declared by the statute and its institution and prosecution in the administrator's name is well a consistent requirement. But so far as the estate is concerned, he is no more than a figurehead. The entire beneficial interest in the cause is vested upon the decedent's death in the distributees the statute designates, as has been said.

Moreover, the standing of the distributees as parties in interest in a technical sense is not the only point of consideration in determining the effect of their fault. They are parties in interest in the sense of being interested persons, in every practical way. The *Warren* case says: "The fact that the father [the distributee] will be indirectly benefited is only an incident of the suit." The statutory award of the recovery to him and the recovery as the only service and objective of the suit show that the statement has reference to the course of procedure and not to the essential features. The substantial situation is that the cause of action and the action are the distributee's affair and no one else's. In *Cogswell* v. *Railroad, supra,* the administrator's release of the claim was valid, under a view that his fiduciary position implied authority to act with the distributee's assent. To take away the defence of contributory negligence because of the intervention of a fiduciary having no personal interest at stake and with but slight interest of authority is to give outward appearance virtue at the expense of inner realities.

The defence of contributory negligence rests upon the principles that one shall not profit from his own wrong and that of denying compensation for a loss which the loser's fault has helped to bring about. His fault sharing to produce the loss, he has no remedy. If one may not recover for a loss of which his own fault is causal, it would not seem material whether the loss is his from the beginning or later becomes his through the death of the injured party. If the distributee's wrong has been a cause of the death, then, if he is allowed to recover, it is for a wrong for which he would be liable had the decedent lived. And if there are distributees who are innocent, he continues liable. In such a situation he would have no share in the recovery in an action brought against him. His wrong would bar him, and since there may be no contribution among wrongdoers, it logically follows that there should also be a bar as to him if the action is against a joint or concurring wrongdoer who is not a distributee. If the wrongdoing

distributee may receive the proceeds of the action, their payment by another wrongdoer means that a well established and salutary doctrine yields to a legal formalism. An intent thus to give a wrongdoing distributee equal rights with an innocent one is not to be ascribed to the legislature in the absence of clear evidence of it.

If the decedent's negligence was a cause of his death, he had while living no right of action and none survived. But if he was not in fault and the distributees are, their succession to the right of action is defeated under a common-law defence generally available against liability upon a statute whose terms do not bar it. The interposition of a nominal plaintiff should not take away the defence if substantial justice is not to be dominated by the commands of technicality.

If the statute permitted the action to be brought in the names of the distributees, as well it might for most practical purposes, the defence of contributory fault would seem definitely allowable. Acting wrongfully to cause the death and continuing liable afterwards for the benefit of innocent distributees, one yet may not be the beneficiary of his own liability under any rational notions of legal justice. If his liability were insured, an action brought in his behalf against him would not be maintainable, since it would seek recovery for his own wrong. He would hardly be allowed to claim that he was not a party in interest.

If the administrator, not being a distributee, were negligent as well as the defendant in causing the death, a rule barring the innocent distributees on that account would go to as unjust an extreme in application of the defence of contributory fault as the rule that the distributee at fault may recover. In such a case the cause of action would not be subject to the defence after the decedent's death any more than before it. The distributees would stand in the decedent's right rather than in the administrator's. The action inuring to their benefit, the administrator's personal fault is not chargeable to them as it would be if his fault took place in the discharge of his fiduciary duties. But, although also the decedent's cause of action was not subject while he lived to the defence of a distributee's fault, yet upon his death it should be as to such a distributee, because otherwise the defendant's liability would profit the distributee as a joint wrongdoer. As to innocent distributees, there is no such profit.

By the statute, aside from its limitation of their amount, the computation of damages is different than if the decedent had brought action for the injury, and the difference lies in its purpose to maintain the compensatory theory of damages. Necessarily compensation

to the decedent for his loss had he lived is not the same as compensation to the distributees for the loss the death has occasioned them. Aside from the items of allowance for suffering and expense, the statute seeks to give them recovery for their loss and not to place them in the decedent's position in respect thereto. The trend of judicial thought here has been to emphasize this feature of the statute, with some evolution from earlier statements referring to the loss as that of the estate. *Morrell* v. *Gobeil*, 84 N. H. 150, 153, 154, and cases cited; *Morrison* v. *Railroad*, 86 N. H. 176, 182.

The reference in the *Warren* case to an action by the distributee for loss of his decedent child's service is explained in *Chaloux* v. *Company*, 75 N. H. 281, 282. As an argument it would seem to be adverse to the negligent distributee's claim. A parent who has lost his child's service by an injury to the child caused by his own fault in concurrence or jointly with the fault of another may not recover for the loss from the latter. 20 R. C. L. 617; 46 C. J. 1302, 1303, *s.* 118; Sherm. & Red., Neg., (6th *ed.*), *s.* 71.

It is said in the *Warren* case that if the distributee were barred from recovery by reason of his contributing fault, it would be as reasonable to bar him from inheriting the decedent's estate as his heir. The analogy is believed to be unsound. If the statutory right of inheritance may be controled by common-law principles, an heir's negligence in causing the decedent's death would not be contributory towards any injury to him. For the consequences of the wrong in respect to loss to himself, he should be barred from recovery because of his contribution towards it. Furthermore, he is liable for the wrong. But while the wrong is to the decedent and the cause of action survives for the benefit of the statutory distributees, yet no wrong measurable in damages is done to the decedent's estate or to his heirs. Neither creditors nor heirs may complain except as the heirs as the statutory distributees may be entitled to the proceeds of the action. The other heirs, if any, share in the estate with the wrongdoing heir and thus profit from and enjoy the benefit of the death in the same way that he does. They have not been injured. For them to profit further and receive the wrongdoer's share would serve no policy of the law. The latter's profit and advantage would thereby be transferred to them and make them the beneficiaries of the wrong. Thus having no better standing in principle than the wrongdoer, they would yet gain not only their own innocent benefit from the death but also the wrongdoer's benefit. Their claims to bar him from sharing in the inheritance may be sustained only by giving

them the profit of the wrong which leads to the bar. One should profit from another's wrong no more than from his own. The law is satisfied if he is compensated for his loss. The wrongdoer's profit belongs to him because the statute awards it to him, and no one else is justly entitled to it. There is no one having an injury to be redressed.

There would be the same result if the decedent commenced action against the heir in his lifetime. The action, carried on by the administrator, and the recovery upon it would constitute an asset of the estate. But to deny the heir the right to share therein would unjustly enrich the other heirs in giving them the benefit of a loss unsustained by them. In similar comparison a stockholder who has injured a corporation shares in the proceeds of the adjustment of the liability. Thereby he gains nothing from the wrong but only compensates those suffering from it. He recovers no loss which his fault has caused.

The foregoing considerations lead to the conclusion that the rule relating to direct contributory fault as declared in the *Warren* case is erroneous and in respect thereto the case is overruled.

The rule that a revision of the statutes without change adopts their prior judicial interpretation is not overlooked. The rule is one of presumption which may be met by "weighty evidence to the contrary." *Wyatt* v. *Board of Equalization*, 74 N. H. 552, 557. An erroneous declaration of a determining subsidiary common-law rule in the construction of a statute is properly to be regarded as such evidence.

"The general intent apparent from a consideration of the entire statute in its practical application" (*State* v. *Banks*, 75 N. H. 27, 31) is to be observed in its construction. Liability for wrongfully causing death and compensation for the loss to those sustaining it are the two objects the statute under discussion provides for. "The paramount object of the legislation is to benefit the designated beneficiaries. The medium of enforcement is secondary." *Ghilain* v. *Couture*, 84 N. H. 48, 54. The legislative intent was that the statute, in the light of these objects, should be construed subject to common-law principles deemed of application not forbidden in terms or by implication. The flexibility of the common law through altered or modified declaration is to be assumed to have legislative recognition and acknowledgment. A declaration of a common-law rule which changes the former statement of it amounts in effect, to use language applied to statutes, to a repeal or amendment of the rule as formerly stated. In ordinary thought and in a practical sense a new rule supersedes a former one, although in exactness so-called judicial legislation is merely a statement of the common law in force at a

given time, with the effect to make erroneous a former inconsistent pronouncement of it. If such a so-called change may not be extended in its application to a statute reënacted in a general revision and to which the rule in its erroneous statement has been applied before the reënactment, it is because of an assumed legislative purpose that the error may not be thus corrected. This would restrain the normal exercise of the judicial function and tend to inconsistency and confusion. The correction of the error would be of service according to accidental circumstance. It would apply when no statute is involved and to a statute not reënacted. Its inapplicability to a reënacted statute would be due to the reënactment as the only reason for the exception. Legislation would thereby adopt an error because the courts had made one and not because of any thought that the erroneous declaration was inherently meritorious. The policy would be to perpetuate an error for the sake of unalterable continuity of construction regardless of the virtue of the construction. If it is said that the reënactment without change shows a purpose to adopt the construction whether it is right or wrong, an improper view of legislative purpose is taken. If it is said that it shows a consideration by which the construction is adopted in legislative discretion, theory is given standing in place of fact. It is common knowledge that general revisions are made without such consideration, however the case may be in the separate reënactment of a particular statute. The legislative purpose is that the common law shall be maintained except as its change is ordered, and the purpose to change should fairly appear. There is thus strong and convincing evidence that a general revision of the statutes is not intended to adopt into legislation a prior construction which depends upon the subsidiary ascertainment and declaration of a common-law rule. Where no such rule governs the result, the presumption that revision adopts a prior construction is reasonable. There is then a finding of the fact of the meaning of a statute with no correctible rules to support the finding.

By the *Warren* case a finding was made of legislative intent contrary to the actual intent. The actual intent was to have the common law applied to it. Instead an erroneous rule was applied. If the revision adopted the finding, then there was a change of intent. With no more evidence than the revision in support of the finding of a change, it seems almost a legal fiction instead of a reasonable deduction to claim its assertion. It ascribes to the legislature a change of purpose merely in order to have the change accord with the court's misstatement of the purpose before the revision.

In the case the construction of the statute turned upon the ascertainment of a common-law rule. Is the distributee a party in interest, was the inquiry. If he was one under common-law principles, the defence of his negligence was to be considered. The decision was not that although he was or might be one, yet the defence was not available. It was that the defence could not be maintained because he was not one. There was thus a subsidiary common-law rule upon which the construction depended but which was not intended to be incorporated as a part of the statute. The error in its statement being correctible, the resulting error of construction ought also to be.

The correction of the construction is also justified by the uncertainty in which the *Warren* case left the rule. The *Cogswell* case, adopting the correct rule in relation to another feature of the statute, was decided a few years before the *Warren* case, which did not undertake to overrule or distinguish it, although the brief for the defendant therein relied upon it. The opinion in the *Warren* case discusses imputed negligence more importantly and at greater length than the distributee's standing as a party in interest, to which the *Cogswell* case gives extended consideration. Approval of this branch of the *Warren* case in *Strout Farm Agency* v. *Hosford, supra,* is met by approval of the *Cogswell* case in *Ghilain* v. *Couture, supra,* 53. The result of the decision in the *Warren* case has been to leave the law in doubt. A purpose to overrule the *Cogswell* case is not to be found. It is equally probable that it was not duly considered. If an interpretation of a statute by which a common-law rule is held applicable to it for some purposes but not for others may be proper, the *Warren* case discloses no such view. In the subsequent revisions of the statutes the legislature intended that by the *Cogswell* case the distributee should be regarded generally as a party in interest as much as it intended that by the *Warren* case he was not to be. That he should be one for the purpose of control of the action but not for the purpose of control of his benefit therefrom is an unreasonable inconsistency not to be found adopted unless clearly made manifest. The conflicting aspects of the *Warren* and *Cogswell* cases have hitherto served to make the rule a matter of doubt.

Furthermore, without regard to the distributee's standing as a party in interest, the underlying theory of contributory fault was unconsidered in the *Warren* case. It was also an essential subsidiary issue. A construction with no attention directed to such an issue may doubtfully become legislation through force of the later reënactment of the

statute when the reënactment is in a general revision.   See *Rockwell* v. *Dow*, 85 N. H. 58, 66, 67.

The result is in harmony with the weight of authority.   In some jurisdictions the statute provides that the action shall be brought by the distributees as plaintiffs and in some the doctrine of imputed negligence obtains.   But even where the statute is similar to the local one and a distributee's fault is not imputable to the decedent, the prevailing view and that here taken accord.   8 R. C. L. 782, 783; 23 A. L. R. 674-681; 69 A. L. R. 479, 480.

When some of the distributees are in fault and some are not, the problem becomes one of procedural convenience.   Whether there may be a verdict for full recovery with a judgment for those not in fault for their share of it, or whether the verdict should be only for an amount equal to such share, is an inquiry not now presented.   There are here only two distributees and both are in fault.

Verdicts for the defendant in the actions for the children's deaths should have been directed.

Respecting the action for the death of the adult passenger, both the driver and the owner of the car testified that they did not hear the train's regular whistle for the crossing.   The owner was listening for it, and it might be inferred that the driver also was listening.   He testified that he relied upon the whistle as a warning as well as upon the crossing signals.   The front windows of the car were open.   The noise of the car would not necessarily drown out the sound of a whistle. The make and age of the car and the fact that it was being driven in low gear do not require the finding.   A conclusion that this warning if given and heard would have been acted upon is not unreasonable. There thus being evidence of the defendant's fault as a causal factor of the collision (*Stinson* v. *Railroad*, 81 N. H. 473; *Phillips* v. *Railroad*, 81 N. H. 483; *Morrison* v. *Railroad*, 86 N. H. 176, 181), this action was properly submitted to the jury.

Upon the issue whether the locomotive bell was rung from the whistle post to the crossing, the evidence that it was not rung and that ringing would have been acted upon is too weak to have any substantial value as proof.   Neither the driver nor the owner testified to listening for it.   Its sound is not so loud and sharp as that of the whistle.   The train's rumble was not heard.   The noise of the car driven in low gear and used for over five years adds to the indefiniteness of the proof.   Any conclusion that the bell did not ring is speculative, and if not rung, it is a surmise to say that it would have been heard and heeded if it had been.

It is thought inadvisable to pass upon the other issues of the defendant's negligence. Decision would be of the sufficiency of the evidence relevant to them, and the evidence at another trial may not be the same. Nor does a proper demand for ruling upon the other exceptions appear.

*Judgments for the defendant in the Niemi actions:*

*new trial in the Roy action.*

All concurred.

ON REHEARING. After the foregoing opinion was filed the motion of the plaintiffs in the first three actions for a rehearing was granted upon the issue of the effect of contributory fault.

*Murchie, Murchie & Blandin* and *Everett J. Galloway (Mr. Alexander Murchie* orally), for the motion.

*Hughes & Burns (Mr. Burns* orally), opposed.

ALLEN, C. J. The motions for directed verdicts at the trial, being general, raised the issue of the right to them either by reason of an insufficiency of evidence for the plaintiffs or of conclusive proof of a good defence. *Williams* v. *Duston*, 79 N. H. 490, 491; *Dwyer* v. *Insurance Co.*, 72 N. H. 572, 576. Neither the course of the trial nor failure to except to the charge affected the standing of the motions. If they had merit, submission of the cases to the jury on any ground was error. The exceptions to the denial of the motions saved for transfer to this court the right to a determination of the correctness of the denial with no limitations of consideration. Not one of the cases cited by the plaintiffs holds to the contrary.

The plaintiffs' chief argument is that the negligence of the driver of the automobile should not bar its owner from recovery as a statutory beneficiary.

The driver's conduct was chargeable to the owner. What he did she did. If she did not in fact direct his operation of the car, yet he was under her direction. He was her agent and his mind and hands were the same as her own under the rule of responsibility for an agent's conduct. Assuming that she owed her children the duty of care towards them (see *Dunlap* v. *Dunlap*, 84 N. H. 352), she violated the duty and was liable to them for her agent's wrong as though it

were committed by her personally. It was her wrong in every legal sense as much as the driver's. If living, the children would have a choice between suing either parent. Their causes of action surviving them remained alternative. Those against the mother were as good as those against the father. The statutory assignment of the causes could therefore place her in no better position in respect to them than that in which he was placed. If liability was lacking because of the relation of parent and child, yet there was contributory fault, in the sense of careless conduct towards the children, which was chargeable equally to either parent. The principle that the mother should not enjoy the benefit of an injury to which her carelessness contributed extends to conduct of her agent as well as her own. *Page v. Hodge*, 63 N. H. 610; *Dimock v. Lussier*, 86 N. H. 54, 56; 20 R. C. L. 148; Sherm. & Red., Neg., 6th *ed.*, *s.* 65. Because of her agent's contributing fault she could not recover from the defendant for her own injury, and the reason is equally forceful to bar her from receiving benefit on account of her children's injuries. Since the driver may not recover as a beneficiary, consistency with the general rule of responsibility for an agent's conduct demands that the owner also may not.

In accord with the general rule many cases hold the parents barred when a caretaker's negligence has concurred with that of the defendant. They are cited in notes in 32 L. R. A. (N. S.) 410 and 23 A. L. R. 655. The caretaker's negligence is not imputable to the child, but when he is appointed by the parents to assume in some measure the functions of parental authority and is subject to their direction and control, he is their agent. Their chargeability for his negligence follows under normal principles of agency. While it is said in *Newman v. Company*, 52 N. J. L. 446, 448, that the "custodian is the agent, not of the infant, but of the law," the statement has reference to the relation between custodian and child and not to that between custodian and parent. When it is not a matter of judicial order, one engaged to tend a child has charge of an interest of the engaging parents. The caretaker's negligence is theirs because he is acting for them in their place.

The statute indicates no distinction in respect to contributory fault between that of a beneficiary personally and that of his agent.

The motion invites no further discussion.

*Former result affirmed.*

All concurred.