Coös,
Sept. 4, 1934.

CARROLL FRIZZELL *v.* TAPPAN C. PULSIFER.

*Leon D. Ripley,* for the plaintiff.

*Crawford D. Hening* (by brief and orally), for the defendant.

PEASLEE, C. J.   The case presents two questions. 1. Whether the plaintiff made a case for the jury.   2. If he did, was an issue not covered by the evidence submitted by the charge.

1. The parties agree that the cows the defendant bargained for were "to stand the test."   This meant that they must pass the test for bovine tuberculosis, so as to be eligible for export from Vermont to New Hampshire, on a permit to be issued by public authority.   As there was something remaining to be done to ascertain the quality or state of the property sold, title did not pass until the required state had been ascertained.   If and when that was done, the cows became the property of the purchaser.   P. L., c. 166, s. 19; Vt. P. L., c. 313, s. 7944.

It has been suggested that as the defendant intended to take the cows into New Hampshire, and a permit was necessary for such transportation, therefore title would not pass until the permit was obtained.   This by no means follows.   According to all the evidence the cows were to be delivered at the plaintiff's premises.   In the absence of special agreement upon the subject, neither permit nor test was necessary to a transfer of title.   Those matters became material to that issue only so far as they were made parts of the contract.   The fact that the defendant proposed to take his purchases into New Hampshire, after the plaintiff delivered them to him in Vermont, imposed no obligation upon the plaintiff.   In the absence of a special promise to do so, he was no more bound to obtain the permit than to pay for the transportation.

The parties disagree as to what was meant by passing the test.   The regulations upon the subject were testified to by the plaintiff, without objection being made.   He said that as the animals in question passed they were then eligible for export for a period of sixty days, regardless of the fact that another cow in the same herd was found to be infected.   But because of such association, if the sound animals were not moved within sixty days, a second test of them would be required.   He also testified that nothing beyond passing the test for export was talked of when the bargain was made.

The defendant had a different version. He himself had an accredited herd, and in order to keep its record clear he could not receive into it any animal coming from a herd where there was any infection. Therefore, he claimed, it was not enough that the purchased cows passed the test and were eligible for export. Since there was infection in the herd, the cows would not be acceptable until a later test should show a wholly uninfected herd. It was also his claim that the plaintiff was to procure the permit for removal. This the plaintiff denied.

The defendant did not testify that he said anything to the plaintiff about freedom of the herd from infection until after the first test was made in December, and the result communicated to him. He claimed that he then explained his full position to the plaintiff, and since time must elapse before a second test, asked the plaintiff to keep the cows until warmer weather. The plaintiff denied this claim also, and said that the request that he keep the cows was made by the defendant on the plea that because of certain changes at his place he had no room for the cows at that time.

The defendant visited the plaintiff's place again in April; and there was talk about a retest. The defendant testified that he was still insisting that the plaintiff had not fulfilled his contract; while the plaintiff testified to the effect that the defendant was seeking information as to whether he must cause another test to be made before a permit could be obtained and the cows moved. The plaintiff said he thought it would be required as the sixty days had elapsed. Thereupon the defendant proceeded to have the two cows tested; and after the fire took and paid for the one then living, without any further test of the whole herd. While he testified that he supposed the whole herd had been retested, it appeared that he employed the veterinary to test only the two he had purchased. He also employed the same party to secure the removal permit for him.

There were other evidentiary facts tending to substantiate the plaintiff's position, but enough has been recounted to show that he was entitled to go to the jury upon the proposition that the only condition in the contract was fulfilled by the test made in December, and again by the test made shortly before the fire, and that title had passed accordingly. The motions to take the case from the jury were rightly denied.

2. Subject to exception, the jury were instructed that "The plaintiff, Mr. Frizzell, contends that he sold the animals to the defendant in the fall of 1929; that the transaction was completed at that time,

and that the cows remained thereafter on his farm as a convenience to the doctor." This was merely a part of a general statement of the claims of parties. It does not control or vary the very specific instructions given later, which did not concern the claims of parties but did tell the jury the precise grounds upon which they were to decide the case. The jury were told: "If you find that all the negotiations leading up to the actual transfer of possession and payment for the animals had been completed; that nothing further remained for the plaintiff, Mr. Frizzell, to do; that he had completed the performance of all of his obligations under his trade with the doctor and that the animals were there on his farm merely for the convenience of the doctor and were waiting there for him to call for them and complete payment for them at the time of the fire, then your verdict should be for the plaintiff, Mr. Frizzell. On the other hand, if you take Dr. Pulsifer's version of the transaction and come to the conclusion that at the time of the fire there remained to be performed other obligations on the part of Mr. Frizzell in respect to testing the cows or obtaining a permit to move them to New Hampshire before Dr. Pulsifer was obliged to call for the animals and pay for them, then title had not passed and your verdict should be for the defendant." There is no reasonable ground for any inference that the jury may have been misled by the statement excepted to. *Dimock* v. *Lussier*, 86 N. H. 54.

*Judgment on the verdict.*

WOODBURY, J., did not sit: the others concurred.