Sullivan County Probate Court
No. 86-033

*In re* ESTATE OF INFANT FONTAINE

October 3, 1986

*Upton, Sanders & Smith,* of Concord (*Ernest T. Smith, III,* on the brief and orally), for the plaintiff, Peter Fontaine, Administrator.

*Kfoury & Elliott,* of Manchester (*Martin K. Glennon* on the brief and orally), for the defendant, New Hampshire Insurance Company.

KING, C.J. This appeal from a denial by the Sullivan County Probate Court (*Spanos,* J.) of a petition for distribution presents the question of how to distribute a wrongful death award to the estate of a viable fetus, when one of the estate's two beneficiaries was found to be fifty percent negligent in causing the death of the fetus. We hold that the liability of the defendant insurance company is not reduced by the beneficiary's comparative negligence. We also hold that, after allowable expenses have been deducted, the award is to be distributed in equal halves to the two beneficiaries. Accordingly, we reverse and remand to the probate court for a final accounting of allowable expenses and entry of a decree of distribution consistent with this opinion.

This case arises from an automobile collision between the decedent's mother, Cindra Fontaine, and Evie Etta Stevens. Infant Fontaine, the plaintiff's decedent, died *in utero* as an eight-month-old fetus as a result of the collision. After exhaustion of Stevens's insurance, the present claim was made against the defendant, as automobile liability insurer for Cindra Fontaine and her husband Peter, under the uninsured motorist provision of the policy. This claim was arbitrated through the American Arbitration Association. The probate court upheld the arbitrator's award.

In his memorandum of law to the arbitrator, the plaintiff requested the arbitrator to determine both the degree, if any, to which Cindra Fontaine was negligent, and the damages to which the estate was entitled. The plaintiff also requested the arbitrator to refer the matter to the probate court for determination of allowable expenses, then to deduct those expenses from the award, then finally to deduct "from one-half of the remainder an amount equal to the percentage of fault found attributable to Cindra Fontaine times one-

half of the remainder." The arbitrator awarded $15,000, and found Cindra Fontaine fifty percent negligent. The arbitrator's award reads, "The $15,000.00 damages shall be reduced by one-half of the residue after deducting the allowable expenses as found by the Court." However, we must infer that the arbitrator made an error in translating his arithmetic into a verbal formula. The result of the arbitrator's language would be to deprive Cindra Fontaine of her entire portion, a result which is precluded by the comparative negligence statute, RSA 507:7-a. In any event, on appeal both parties have interpreted the arbitrator to have meant that the defendant's liability is to be reduced by half of Cindra Fontaine's one-half share.

In his petition for distribution filed in the probate court, the plaintiff changed the position he had taken before the arbitrator and asked the probate court to disregard Cindra Fontaine's negligence and award the full amount of damages to the estate. The probate court denied the plaintiff's request, thereby sustaining the arbitrator's award. Accordingly, Cindra Fontaine's share would be calculated by deducting expenses of $6,105.88 from the $15,000 total, dividing the remaining $8,894.12 by two, yielding $4,447.06 for each beneficiary, and then deducting fifty percent of that. Thus, after payment of expenses, Peter Fontaine as a non-negligent beneficiary would receive $4,447.06 and Cindra Fontaine only $2,223.53. The defendant's liability would thus be reduced to $12,776.48. The present appeal contests the reduction both of the defendant's liability and of Cindra Fontaine's share.

At the outset, we disagree with the defendant's argument that the plaintiff should have been estopped in the probate court from changing his position from the one he took in his request to the arbitrator. The parties apparently intended the arbitrator to make a factual assessment of the damages and of the comparative negligence of Evie Etta Stevens and Cindra Fontaine. What complicates the picture is that the parties also essentially stipulated to the arbitrator, as if it were a fact, a rule of law concerning how to distribute the award. Parties cannot bind a court by such a stipulation, *see Butterick v. Butterick*, 127 N.H. 731, 734, 506 A.2d 335, 337 (1986), and such a stipulation cannot prevent the plaintiff from raising a different legal argument in the probate court.

The probate court has jurisdiction to decide questions of law concerning descent and distribution. *See* RSA 547:3. At oral argument before us, the defendant conceded that the plaintiff raised his claim before the first forum that could decide whether the law of distribution in the circumstances of this case had changed. We agree with that concession.

█ █ We proceed to address the merits of the plaintiff's claim. The plaintiff's action is controlled by RSA 556:9–:14. An action for recovery of damages for wrongful death exists purely as a statutory creation. *See Kelley v. Volkswagenwerk*, 110 N.H. 369, 268 A.2d 837 (1970). The defendant argues that *Niemi v. Railroad*, 87 N.H. 1, 173 A. 361 (1934) and *Martineau v. Waldman*, 93 N.H. 386, 42 A.2d 735 (1945) (awarding attorney fees and reaffirming the substantive decision ordered at 93 N.H. 147, 42 A.2d 386) settled that the share of contributorily negligent beneficiaries must be deducted from the defendant's liability in a wrongful death action. We believe that the 1971 amendment of RSA 556:14 negates the rational of *Niemi* and *Martineau*. Because RSA 556:14˙ now makes the wrongful death action exclusively for the benefit of the decedent's estate, we hold that the comparative negligence of the decedent's mother is not a relevant consideration in assessing the defendant's liability.

Prior to 1971, RSA 556:14 read in pertinent part that the damages, after deducting allowable expenses,

> "shall belong and be distributed as follows: . . .
>
> IV. If there be no child and no widow or widower, to the heirs at law of the deceased according to the laws of distribution."

RSA 556:14 (1955); PL 302, § 14 (1926). *Niemi* declared that the real parties in interest in a death action were the statutory distributees and that the administrator was merely an agent for the distributees. *Niemi, supra* at 6, 173 A. at 364. We concluded in that case that, "[t]o take away the defence of contributory negligence because of the intervention of a fiduciary having no personal interest at stake and with but slight interest of authority is to give outward appearance virtue at the expense of inner realities." *Niemi, supra* at 6, 173 A. at 364. *Martineau* extended *Niemi* by denying a contributorily negligent distributee his proportionate share when there were also innocent distributees. In that case, we deducted the reduced share from the defendant's liability. *Martineau, supra* at 388, 42 A.2d at 736.

The present form of RSA 556:14 has deleted the crucial language "shall belong and be distributed as follows" and the concomitant classes of distributees. The new language is "shall become a part of the decedent's estate and be distributed in accordance with the applicable provisions of law."

The meaning of this language is amplified by the legislative history and by case law decided after the 1971 amendment. House Bill 149, *An Act To Repeal The Dollar Limitation On Recovery In Wrongful Death Actions*, 1971, was introduced to amend RSA 556:13, and was revised to amend RSA 556:12 and :14 also. Its sponsor, Repre-

sentative David Bradley, explained the amendment: "The bill changes the distribution of damages once assessed. The present law specifies how the damages are to be distributed. This changes it so that it goes in accordance with the will or intestate distribution." *Hearings on H.B. 149 before the Senate Judiciary Committee*, April 13, 1971. Representative William Andrews said in the same hearing, "The basic purpose of the bill is to bring the law into uniformity with the common law and the laws of descent and distribution." No other speakers commented on it, and the Judiciary Committee recommended the bill unanimously. It clearly appears, then, that the legislature intended wrongful death actions to benefit the estate, rather than the distributees.

Two cases give additional definition to RSA 556:14. In *In re Estate of Wood*, 122 N.H. 956, 453 A.2d 1251 (1982), we held that New Hampshire, rather than Massachusetts, law governs an action for death that wrongfully befell a New Hampshire resident while he was in Massachusetts. We noted that the "New Hampshire wrongful death statute, which permits distribution of the death benefits in accordance with the provisions of the decedent's will, is the sounder rule of law because it fosters the intent of the decedent-testator." 122 N.H. at 958, 453 A.2d at 1252. *Compare* MASS. GEN. LAWS ANN. 229 § 1 (West 1985); *Sullivan v. Goulette*, 344 Mass. 307, 182 N.E.2d 519 (1962); *Maltzman v. Hertz*, 336 Mass. 704, 147 N.E.2d 767 (1957). Moreover, we reaffirmed in *Siciliano v. Capitol City Shows, Inc.*, 124 N.H. 719, 728, 475 A.2d 19, 23–24 (1984) that "by contrast [to the large majority of States], the New Hampshire legislature has enacted a statute which limits damages to the injuries suffered by the decedent and his or her estate. RSA 556:12. Damages are not assessed based on the loss suffered by surviving relatives." *See also Carney v. Railway*, 72 N.H. 364, 376, 57 A. 218, 224 (1903).

Thus, neither the cause of action nor the basis for damages has any reference to the eventual beneficiaries. This conclusion is not inconsistent with *Lozier v. Brown Company*, 121 N.H. 67, 426 A.2d 29 (1981). While *Lozier* concluded that an action brought under RSA 556:9–:14 is both a survival action and a wrongful death action, and labeled a wrongful death statute as one that "creates a new cause of action in someone other than the decedent for loss caused by the decedent's death," *id.* at 69, 426 A.2d at 30, *Lozier* is limited to its holding regarding the statute of limitations applicable to suits under RSA 556:11. As noted in *Lozier*, an action for the decedent's future lost earning capacity cannot accrue until his death extinguishes his future earning capacity. In that sense, *Lozier* held that the action did not survive the decedent, but vested in his administrator when the decedent died. *Lozier* stressed that RSA 556:12 allows

damages both for losses sustained by the decedent during his life and for the value upon his death of future net earnings. *Id.* at 69–70, 426 A.2d at 31. This, however, does not change the fact that both losses are the decedent's and, conversely, neither is for the survivors' suffering or loss of society.

Our decision today is consistent with decisions in jurisdictions with statutes that permit survival of the decedent's action, rather than authorizing a new and separate wrongful death action. In these, the contributory or comparative negligence of one of the eventual beneficiaries has not been even a partial defense. *See Schetter v. United States*, 136 F. Supp. 931 (W.D. Pa. 1956) (under Pennsylvania law specifically distinguishing survival from wrongful death actions); *Oviatt v. Camarra*, 210 Or. 445, 311 P.2d 746 (1957) (under a statute vesting the right of action in the estate only when there are no surviving dependents or spouse); *Kuehn v. Jenkins*, 251 Iowa 718, 100 N.W.2d 610 (1960); *Shinaver v. Szymanski*, 14 Ohio St. 3d 51, 471 N.E.2d 477 (1984) (distinguishing survival from wrongful death actions); *see also* Annot., 2 A.L.R.2d 785, 787–88 (1948).

 Because the focus of New Hampshire's wrongful death action is the interest of the decedent's estate, and not the interest of the distributee, the mother's comparative negligence would be a defense only if it were imputable to the deceased fetus. *See Niemi*, 87 N.H. at 7, 173 A. at 365. However, it cannot be imputed. We have long held that a parent's negligence cannot be imputed to the child. *See Doyle v. Lacroix*, 85 N.H. 247, 157 A. 75 (1931). Absent a finding that the driver and passenger were engaged in a joint enterprise, the negligence of a driver is not imputable to the passenger. *See Ali v. Gingras*, 97 N.H. 289, 290, 86 A.2d 336, 338 (1952); *compare Freeman v. Scahill*, 92 N.H. 471, 473, 32 A.2d 817, 818 (1943). Finally, we note that an action for the death of a viable fetus may be maintained wholly apart from any action to recover for injury to the mother arising from the same incident. *Poliquin v. MacDonald*, 101 N.H. 104, 135 A.2d 249 (1957). To hold the negligence of the mother imputable to the fetus is asymmetrical with *Poliquin* and would improperly erode it.

Since we have determined that the statute requires that the full $15,000 be paid to the estate, this leaves only the question of how to distribute the award. Cindra and Peter Fontaine take the award as heirs at law of the infant's intestate estate. The question is whether Cindra Fontaine's negligence in causing the infant's death has any bearing on her inheritance. We hold that the two beneficiaries are entitled to receive equal halves, after allowable expenses have been deducted.

Many States have a statute requiring a willful killer to forfeit his inheritance from his victim. However, none of these States compels forfeiture for mere negligence, such as Cindra Fontaine's. *See, e.g., Estate of Kramme*, 20 Cal. 3d 567, 143 Cal. Rptr. 542, 573 P.2d 1369 (1978); *In re Estate of Klein*, 474 Pa. 416, 378 A.2d 1182 (1977); *see also Wilson v. Miller*, 20 N.C. App. 156, 201 S.E.2d 55 (1973) (involuntary manslaughter was insufficient reason for compelling forfeiture). The statutory policy of deterring homicide can hardly be served by requiring forfeiture for negligence.

New Hampshire has no statute regarding a killer's forfeiture of the right to inherit. In *Kelley v. State*, 105 N.H. 240, 196 A.2d 68 (1963), the husband was convicted of manslaughter, but was allowed to inherit his slain wife's estate. *Kelley* stated that, in the absence of a statute, the court could impose a constructive trust on the heir when otherwise the heir would unjustly profit from his wrongdoing. In *Kelley*, we did not impose a trust. The property in the wife's estate was essentially his property from before their recent marriage and, moreover, had been depleted during the marriage by expenditures made for her benefit.

We are instructed by *Kelley* to consider substance rather than form. 105 N.H. at 243, 196 A.2d at 70. In the case before us, Cindra Fontaine receives only the damages sustained by the deceased. In an action under RSA 556:12, she is not and statutorily cannot be compensated for her own loss; namely, the loss of her infant and her own attendant trauma. In this light, there is no reason to impose a constructive trust. The award is to be distributed equally, after the probate court determines the allowable expenses and subtracts them from the total award.

*Reversed and remanded.*

All concurred.