**AETNA CASUALTY & SURETY COMPANY, Plaintiff, Appellee,**

v.

**Barbara R. CURLEY, et al., Defendants, Appellees.**

**Appeal of Lynn A. WILSON, Defendant.**

**No. 89–2159.**

United States Court of Appeals, First Circuit.

Heard April 4, 1990.

Decided May 11, 1990.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

## CERTIFICATION

TO THE HONORABLE, THE JUSTICES OF THE SUPREME COURT OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS:

This is a diversity case, 28 U.S.C. § 1332, wherein the substantive law of Rhode Island applies. The case implicates competing public policy concerns and involves legal issues as to which we have found no directly controlling Rhode Island precedent. Accordingly, we take the liberty of certifying certain questions to you in accordance with Rhode Island Supreme Court Rule 6 and respectfully request that you favor us with answers thereto.

### Background

We set out a succinct summary of the pertinent facts and travel. On July 26, 1983, a fire occurred at the home of Barbara R. Curley, 74 Second Street, Pawtucket, Rhode Island. Her father, the late Leonard C. Bruse, was injured in the blaze. Mr. Bruse died intestate from those injuries in September 1983. He was survived by his daughter, Mrs. Curley, and no other relatives of equal or greater affinity or consanguinity. The parties agree that under Rhode Island's intestacy laws and applicable principles of descent and distribution, Mrs. Curley was, and remains, Mr. Bruse's sole heir.

Prior to July 1983, Aetna Casualty & Surety Company (Aetna) issued a homeowner's insurance policy to Mrs. Curley

referable to the Second St. premises. The policy was in effect on July 26, 1983. Under Section II thereof (Coverage E), Aetna agreed in substance to indemnify and defend its insured, Mrs. Curley, with respect to damages for "bodily injury" up to a stipulated limit of liability. The policy defined "bodily injury" as encompassing "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom."

On January 9, 1984, Mrs. Curley's daughter, Lynn A. Wilson, was appointed administratrix of her grandfather's estate by the Pawtucket Probate Court. Roughly ten weeks later, she sued Mrs. Curley in Providence County Superior Court, claiming that Mrs. Curley's negligence in carelessly discarding a lit cigarette caused the ustulation and, consequently, Mr. Bruse's death. In her amended complaint, the administratrix prosecuted separate claims for (1) "survival" damages, that is, medical expenses and diminution of earnings prior to death, R.I.Gen.Laws § 10–7–5 (1985 Reenactment), specifically including damages for pain and suffering under R.I.Gen.Laws § 10–7–7 (1985 Reenactment); and (2) "wrongful death" damages under R.I.Gen. Laws § 10–7–1 (1985 Reenactment). Aetna defended the suit under a reservation of rights.

Through separate counsel, Aetna commenced a declaratory judgment action in the United States District Court for the District of Rhode Island in July 1988. Mrs. Curley and the administratrix were named as defendants. In a nutshell, the insurer sought a declaration that it had no obligation to indemnify Mrs. Curley for any damages which might be assessed in the superior court action. Aetna's basic premise, of course, was that it would offend public policy to permit Mrs. Curley, as the sole beneficiary of her late father's estate, to recover from herself, as it were, in the pending action. Aetna's delay in bringing the declaratory suit is unexplained as is its choice of a federal forum.

Notwithstanding the federal court initiative, the administratrix's action was moving ahead on the superior court's continuous calendar. It was reached for trial in early 1989. Mrs. Curley's negligence was determined to be the proximate cause of Mr. Bruse's death. The jury awarded $50,000 in wrongful death damages and $200,000 in survival damages. Mrs. Curley, through Aetna's assigned counsel, appealed. The appeal is currently pending before Your Honors.

The battle then reverted to federal district court. In a pair of *ore tenus* decisions (one addressing wrongful death damages and the other addressing survival damages), the district court, Hon. Ernest C. Torres, *District Judge*, declared that Aetna had no obligation to indemnify Mrs. Curley with respect to any of the damages awarded in the superior court suit. In so ruling, the district court relied in part on records of the Pawtucket Probate Court indicating that no third-party creditors had filed claims against the estate, R.I.Gen.Laws § 33–11–4 (1985 Reenactment), and that the time for filing had long since expired, *see id.* § 33–11–5. Although the administratrix claimed to know of certain bills which, conceivably, represented debts of the estate, the district court considered this claim to be of no consequence. Following entry of judgment, the administratrix appealed to this court.

The district court's bench decisions are contained in the record transmitted herewith. So is information, admittedly sketchy, as to counsel's claim of estate indebtedness. In substance, counsel has represented that these "debts" total $65,808.89, comprising expenses of Mr. Bruse's last illness ($20,699.74), legal fees purportedly owed ($42,089.15), and funeral costs ($3,020.00).

### The Issues

The central focus of the federal litigation is whether recovery may be had in a civil action brought by the personal representative of a decedent's estate in circumstances where the death was caused by unintentional (but nevertheless negligent) conduct of a tortfeasor who is also the sole, or at least a principal, beneficiary of the estate; and if such recovery may be had at all, to

what extent. Your Honors' earlier opinions afford some guidance. Thus, in *Walsh v. Israel Couture, Post No. 2272*, 542 A.2d 1094 (R.I.1988), a plaintiff was precluded from maintaining a personal injury action against an unincorporated association of which he was a member. Pointing out that "[a]ll members of a joint enterprise are chargeable with the negligence of a member of the joint enterprise ... within the scope of the agency created," Your Honors stated: "Simply put, this means that plaintiff is himself chargeable with the negligence that caused his own injury. Were we to allow recovery in these circumstances we would, in effect, countenance a situation in which a party would be both plaintiff and defendant. Such a holding would place in disarray long-settled case law in this jurisdiction, and does not accord with the dictates of logic and common sense." *Id.* at 1096 (citations omitted). In *Morin v. Aetna Casualty and Surety Co.*, 478 A.2d 964 (R.I.1984), Your Honors prohibited a party convicted of statutory burning (an intentional act) from collecting fire insurance proceeds, stating that "[t]o permit such recovery ... would violate all standards of public policy and defy the administration of justice." *Id.* at 967. Yet these cases, while suggestive, are not necessarily conclusive.

For one thing, this case involves the Rhode Island Wrongful Death Act in a context where an administratrix sued, and received judgments for, both wrongful death damages, R.I.Gen.Laws § 10–7–1, and survival damages, *id.* §§ 10–7–5, 10–7–7. Such claims invoke "separate measures of recovery and provide for distinct measures of distribution" of proceeds. *O'Leary v. Bingham*, 90 R.I. 441, 159 A.2d 619, 621 (R.I.1960). They are, in short, "two independent causes of action" which "by their very nature ... call for separate judgments." *Id.* And those "separate judgments," at least potentially, may ultimately redound to the benefit of different persons. *Compare* R.I.Gen.Laws § 10–7–2 (recovery for wrongful death under § 10–7–1 goes directly to next of kin as therein provided) *with* R.I.Gen.Laws § 10–7–6 (recovery of survival damages un-

der § 10–7–5 "shall go to the decedent's estate and become part thereof").

A further, potentially complicating factor is that the district court, in declaring that Aetna had no obligation to indemnify Mrs. Curley with respect to the damages awarded in the superior court, relied in part on the absence of third-party creditor claims in the probate proceedings. Subsequent to oral argument before us, however, it has been made manifest that, unless actual notice was received and ignored, known or reasonably ascertainable creditors of an estate should be accorded considerable latitude in filing claims out of time. *See In re Estate of Santoro*, 572 A.2d 298 (R.I.1990). We are uncertain as to the effect, if any, of *Santoro* on the instant case.

Lastly, we note that while Your Honors have not explicitly addressed a situation identical to that before us, the authorities elsewhere are in some dishevelment. One view is that the court should look beyond the nominal plaintiff to the real party in interest, that is, beyond the personal representative to the actual beneficiary. When there is an identity between beneficiary and defendant, recovery must be denied (or, in cases where the tortfeasor is not the sole beneficiary, proportionately reduced). *See, e.g., Davenport v. Patrick*, 227 N.C. 686, 44 S.E.2d 203, 205–06 (N.C.1947).

A second view (adopted, insofar as our preliminary research has revealed, only in New York) holds the duality of roles to be immaterial. *See, e.g., Weiner v. Weiner*, 386 F.Supp. 951, 953 (E.D.N.Y.1974) (discussing "apparently settled [New York] rule that in wrongful death cases arising out of intra-family tort, the fact that a beneficiary, or the sole beneficiary of any wrongful death recovery is the defendant whose negligence caused the death does not bar a recovery"). The rule applies even in circumstances where the tortfeasor/beneficiary is also the personal representative of the decedent's estate. *See Rozewski v. Rozewski*, 181 Misc. 793, 798, 46 N.Y.S.2d 743, 746–47 (1944).

There is yet a third view, distinguishing between wrongful death actions wherein damages are paid directly to designated

beneficiaries and survival actions wherein damages are paid to the decedent's estate. In general, these cases hold that, in the former circumstance, the action cannot be maintained, but in the latter circumstance, the action can be maintained even if the award eventually passes through to, and benefits, the wrongdoer. *See, e.g., In re Estate of Infant Fontaine,* 128 N.H. 695, 519 A.2d 227, 229–31 (N.H.1986); *Kuehn v. Jenkins,* 251 Iowa 718, 100 N.W.2d 610, 618–19 (Iowa 1960); *Oviatt v. Camarra,* 210 Or. 445, 311 P.2d 746, 749–51 (Or.1957). As Your Honors are well aware, the Rhode Island statute permits complementary recovery of both wrongful death and survival damages.

### The Questions

Given this backdrop, we certify to you the following questions:

1. Can the personal representative of a decedent recover wrongful death damages under R.I.Gen.Laws § 10–7–1 which will go directly to the decedent's only surviving child in circumstances where the child's negligence was the sole proximate cause of the decedent's death?

2. Can the personal representative of a decedent recover survival-type damages under R.I.Gen.Laws §§ 10–7–5, 10–7–7, from the tortfeasor whose negligence was the sole proximate cause of the decedent's death in circumstances where the tortfeasor is also the sole, or a principal, beneficiary of the decedent's estate?

3. If the answer to the immediately preceding question is in the affirmative, must the damages be proportionately reduced (or otherwise limited) to eliminate that portion of the recovery which would otherwise be payable to the tortfeasor/beneficiary upon distribution of the estate?

We wish to make it clear that we would also welcome the advice of the Rhode Island Supreme Court on any other relevant aspect of Rhode Island law which Your Honors believe should be clarified in order to give context to your response or to permit the proper resolution of the state-law issues confronting us.

The clerk of this court will transmit this certification, along with copies of the briefs and the record appendix in the case, to Your Honors. We shall await your response with interest and appreciation.