762 A.2d 830 (2000)
In re A.S., Juvenile
No. 00-088.
Supreme Court of Vermont.
October 12, 2000.
Motion for Reargument Denied November 2, 2000.
Present: Chief Justice AMESTOY, Justices DOOLEY, MORSE, JOHNSON and SKOGLUND.

ENTRY ORDER
After seven-year-old A.S. was determined to be a child in need of care and supervision, and her parents voluntarily relinquished their parental rights, the child's paternal grandmother sought custody and guardianship or, in the alternative, visitation rights under 33 V.S.A. § 5528(3)(B). Family court granted visitation to grandmother but denied guardianship, and transferred custody to the Commissioner of Social and Rehabilitation Services without limitation as to adoption. On appeal, grandmother contends that the family court erroneously assumed that in the event of adoption of A.S. by her foster parents, the probate court was authorized to ensure continued visitation. Grandmother asserts the error requires reversal of the court's decision, and a remand to determine whether an alternative disposition order is in the best interests of the child. We affirm.
A.S. was born in January 1993. In August of that year, A.S.'s father went to jail. In October, both parents relinquished A.S. to her paternal grandmother through a voluntary probate guardianship. A.S.'s mother subsequently left the state. In January 1994, family court granted grandmother placement and primary care of *831 A.S. Grandmother returned A.S. to live with her father upon his release from jail in May 1994.
Over the next four years, A.S.'s father was in and out of jail on various offenses, including: sexual assault on a minor, aggravated assault, burglary, reckless endangerment, disorderly conduct, hate crimes and a number of probationary violations. Whenever father was released from jail, grandmother returned A.S. to his care. According to the family court:
Despite being aware of her son's abusive and neglectful life style, and despite having a Probate Guardianship Order and a Family Court Order giving her placement and primary care of A.S. since 1993 [grandmother] repeatedly allowed her son to have physical custody of A.S.
Nevertheless, during the periods of father's incarceration, grandmother provided "a consistent home environment and sought medical and educational services for A.S."
In December 1997, family court placed A.S. in SRS custody after authorities discovered that she and her father were living in a van. A.S. was found to be in need of primary care, and developmentally delayed with a speech and language deficit of 18 months. SRS immediately placed A.S. in the foster home of A. and L.A., who now "consider A.S. one of their family," and plan to "adopt A.S. if custody is given to SRS and she is freed for adoption."
At the initial disposition hearing, SRS recommended that custody and guardianship be transferred to the department without limitation as to adoption. Grandmother opposed SRS's recommendation, and sought custody pursuant to 33 V.S.A. § 5528(3)(B), which allows the juvenile court to place custody of a child found to be in need of care and supervision with "any other individual found . . . to be qualified to receive and care for the child." Grandmother sought, in the alternative, visitation.
The court determined that grandmother was not qualified to assume custody of A.S. It stated that "while [grandmother] loves her granddaughter and wants to do what is best for her, she is not qualified to receive and care for A.S., whose development has already been placed at risk." The court further noted that grandmother's "inability to protect A.S. in her early years from the abuse and neglect of her father ... raises serious concerns whether [she] could protect A.S. when her son is released from jail."
The court granted custody and guardianship to SRS, indicating that adoption by the foster parents was clearly and convincingly in the child's best interests. The court stated:
It is in A.S.'s best interest that she continue with the social, emotional and developmental growth she has shown with the [foster parents]. After a chaotic, abusive and neglectful beginning to her life, A.S. deserves the permanence and stability she has found during the last 21 months in the [foster] home.
The court also recognized A.S.'s relationship with her grandmother: "[i]t is clear A.S. enjoys seeing her grandmother and is enthusiastic during their meetings.. . . A.S. exhibits interest and curiosity about her family and wants to have this family contact." While the court found that A.S. "flourished" in the foster parents' care, it also noted that the foster parents had been averse to maintaining contact with grandmother, and reluctant to provide their phone number or mailing address. The court observed that if the foster parents and grandmother were unable to settle their differences, "it appears that the Probate Court may consider the issue of grandparent visitation in this case under 15A § 4-112(c) . . . ." (emphasis added).
On appeal, grandmother asserts that the family court erred in concluding that court-ordered visitation could survive adoption pursuant to 15A V.S.A. § 4-112(c). Both parties readily concede that Article 4 of the Adoption Act pertains exclusively *832 to stepparent adoptions, and is not applicable in this instance. Grandmother contends that the error compels remand to the family court to consider whether it should impose a disposition other than adoption in order to permit continuing judicial oversight regarding visitation. SRS contends that the error was harmless, and that the court's decision to release the child for adoption was not contingent upon its erroneous application of the statute to ensure grandparent visitation. We agree with SRS that the court's reference to 15A V.S.A. § 4-112(c) was not a precondition of its disposition order.
Although the family court recognized the importance of A.S.'s relationship with her grandmother, there is nothing in the court's order which enables us to read that freeing the child for adoption by the foster parents was contingent upon ensuring grandmother's visitation rights. On the contrary, the court explicitly indicated that grandmother's visitation rights would terminate upon adoption:
This Court supports and encourages the adoption of A.S. by Mr. and Mrs. [A.] knowing full well that the visitation rights granted by this Order will expire when A.S. is adopted through the Probate Court.

(emphasis added). Furthermore, in its order, the court granted grandmother "visitation rights to AS . . . until AS is adopted" pursuant to 15 V.S.A. § 1011. (Emphasis added.) Grandparent visitation under Title 15 expires "[w]hen a child subject to an order under this chapter is later adopted." 15 V.S.A. § 1016.
This disposition is consistent with the Adoption Act in which three separate provisions specify that final adoption decrees render outstanding orders and visitation agreements unenforceable. 15A V.S.A. § 1-109 ("When a decree of adoption becomes final, except as provided in Article 4 of this title, any order or agreement for visitation or communication with the minor shall be unenforceable."); 15A V.S.A. § 3-703(c) ("the decree of adoption terminates any existing order for visitation or communication"); 15A V.S.A. § 3-705(c) ("[e]xcept for a decree of adoption of a minor by a stepparent which is issued pursuant to Article 4 of this title, a decree of adoption of a minor shall contain a statement that any order or agreement for visitation or communication with the minor that was in effect before the decree is issued shall be unenforceable.").
The court discussed 15A V.S.A. § 4-112(c) in its decision to grant grandmother visitation, but its determination to free A.S. for adoption was not premised on the applicability of the statute. Indeed, to the extent the family court's opinion can be read to link visitation with a determination of A.S.'s ultimate best interests, the decision is sensitive to the impact of visitation on the child's integration into a new family. The court advised that "[grandmother's] connection with A.S. be maintained . . . so long as it is not detrimental to A.S. or her permanent placement with the [foster parents]." The court suggested that contact should be regular, but "infrequent, as one might see a close relative who lives at a distance from the home." Finally, the court explicitly conditioned visitation on guidelines that limited contact to specific terms, including that the relationship develop in the context of A.S.'s adoption by the foster parents, in a manner which makes clear "that A.S. will be living in and be a part of the [A.] home throughout her childhood."
The family court's mistaken view of the applicability of 15A V.S.A. § 4-112(c) did not materially affect its conclusions of law, nor the findings of fact which support them. No purpose can be served by a remand where, as here, there is clear and convincing evidence that the court's disposition was in the child's best interests.
Affirmed.