788 A.2d 10 (2001)
In re S.P., Juvenile.
No. 01-179.
Supreme Court of Vermont.
September 26, 2001.
*11 Present: AMESTOY, C.J., DOOLEY, MORSE, JOHNSON and SKOGLUND, JJ.

ENTRY ORDER
R.B., the custodial guardian of S.P., a child found to be in need of care and supervision (CHINS), appeals the family court's disposition order terminating her guardianship and transferring custody of the child to the Department of Social and Rehabilitation Services (SRS) without limitation as to adoption. We affirm.
S.P. was born on January 12, 1994. On December 23, 1994, a probate and family court in Massachusetts appointed S.P.'s maternal grandmother, R.B., as the child's guardian and gave her legal custody of the child because his parents were unfit. R.B. moved to Vermont with S.P. In the spring of 1997, S.P. exhibited aggressive and highly sexualized behavior at the pre-school he was attending. On several occasions, he came to the pre-school with bruises located on parts of his body where it would be unusual to see accidental bruising. The matter was referred to SRS for investigation, but insufficient information was uncovered to substantiate any abuse. S.P.'s highly sexualized behavior continued, however, and the child became emotionally distraught on a number of occasions during the following two or three years. At one point, during an October 1999 child protection team meeting, it came up that R.B.'s adult son, an adjudicated sex offender who had not completed sex offender treatment, was living with R.B. and S.P. R.B. was given six weeks to remove her son from her home or face another "risk of harm" investigation. In December 1999, after S.P. told authorities that he still saw his uncle every day, and that his uncle was sexually abusing him, S.P. was taken into SRS custody. R.B. eventually stipulated that the family court could find by clear and convincing evidence that her son had sexually abused S.P.
Following a merits hearing, the family court found S.P. to be a child in need of care and supervision. In making this determination, the court found that S.P. had told R.B. of his abuse at the hands of his uncle, and that R.B. was well aware that her son was an untreated sex offender who had sexually abused his sisters (her daughters) years earlier. The court further found that R.B. had knowingly and unreasonably exposed S.P. to his uncle's abuse, and that the abuse predictably occurred as the result of R.B.'s disregard of the patent risks known to her. The court concluded that S.P. was without proper care and supervision because of R.B.'s failure to protect him from his uncle's abuse.
Following a disposition hearing, the family court terminated R.B.'s guardianship and transferred custody of S.P. to SRS without limitation as to adoption.[*] The court found that R.B. consciously disregarded the obvious dangers and allowed her son to viciously attack S.P., thereby causing the child serious and permanent injuries. Calling her behavior "outrageous at best," the court declared that R.B. was an unfit custodian and guardian under any standard, whether it be an unfitness test under 14 V.S.A. § 3001 (probate court may remove guardian who is incapable of discharging duties with respect to minor) and 14 V.S.A. § 3077(a)(5) (guardianship may be terminated upon showing of change in capacity or suitability of guardian for carrying *12 out duties) or a best-interests test under 33 V.S.A. § 5532(a) (prior order in juvenile proceedings may be terminated upon showing that changed circumstances so require in best interests of child) and 33 V.S.A. § 5540 (listing factors for family court to consider in determining best interests of child).
On appeal, R.B. argues that the family court has jurisdiction to apply only the changed-circumstances/best-interests standard contained in the juvenile proceedings act, and that the court erred in applying this standard because it did not take into account whether SRS's failure to provide her with services led to stagnation in her parental abilities and thus affected the likelihood of her being able to resume parental duties within a reasonable period of time. We find no merit to this argument. We conclude that, under any standard, the evidence supports the family court's decision to terminate R.B.'s guardianship and place S.P. in SRS custody without limitation as to adoption. The evidence of R.B.'s incompetence as S.P.'s guardian is overwhelming. Her conscious disregard for her grandson's safety and welfare warranted immediate and permanent cessation of her guardianship and custodial rights.
As R.B. acknowledges, the family court has the authority to modify the Massachusetts guardianship order. In relevant part, 33 V.S.A. § 5528 provides that if a child is found to be CHINS, the family court may "[p]ermit the child to remain with his parents, guardian or custodian," or "[t]ransfer legal custody, or guardianship over the person, or residual parental rights and responsibilities" to individuals or entities as set forth in the statute. Although we know little of the circumstances surrounding the issuance of the Massachusetts guardianship order, we accept R.B.'s position that the order, like any other family court order, cannot be amended or set aside unless the standard set forth in 33 V.S.A. § 5532(a) of the juvenile proceedings act is satisfied. Under that section, prior orders of the family court may be set aside (1) upon a showing of fraud, mistake, lack of jurisdiction, or newly discovered evidence; or (2) "on the ground that changed circumstances so require in the best interests of the child." Id.
In the context of this case, however, this standard does not differ significantly from the standard of unfitness contained in 14 V.S.A. §§ 3001, 3077(a)(5) for removing a guardian. The purpose of a guardianship, as its name suggests, is to lawfully invest a person with the authority and duty to protect and take care of another person. Black's Law Dictionary 712 (7th ed. 1999) ("guardian" is person "who has the legal authority and duty to care for another[] person ... because of the other's infancy, incapacity, or disability"). The Massachusetts court that issued the guardianship order in this case obviously believed that R.B. would be willing and able to protect and care for S.P. That turned out not to be the case, however. S.P. was adjudicated CHINS based on R.B.'s manifest neglect in failing to protect him from serious and permanent injury. The CHINS order, in and of itself, demonstrates a substantial change in material circumstances  the custodial guardian is unable to protect and care for her ward, contrary to expectations when the guardianship was conferred.
This is not a "stagnation" case, as R.B. suggests. When a court removes a child from a parent's custody, and the parent fails to acquire parenting skills that would allow the parent to resume their parenting role, we refer to this as stagnation, which may be a basis for finding changed circumstances. See In re J.M., 160 Vt. 146, 149, 624 A.2d 362, 364 (1993) *13 ("substantial change in material circumstances is most often found when" parent's ability to care for child has "either stagnated or deteriorated" over time). But this case concerns a custodial guardian with limited rights, not a parent who retains residual parental rights following the loss of custody. See 33 V.S.A. § 5502(a)(6) ("Guardianship of the person of a minor" bestows right to reasonable visitation, among other things, but not authority to consent to adoption, unless specifically ordered by court); id. § 5502(a)(10) ("Legal custody" bestows right to physical possession of minor, but is "subject to any residual parental rights and responsibilities"); cf. Mass. Gen. Laws ch. 210, § 2 (guardian not listed as one of persons required to give written consent to adoption). Once it is shown that a guardian is no longer able to fulfill her guardianship duties, changed circumstances exist without a need to demonstrate stagnation.
Further, in determining whether the best interests of a child warrant terminating a guardianship order  which entails the second part of the standard for amending or setting aside prior court orders  the family court is not compelled to find that the guardian will be unable to resume parental duties within a reasonable period of time. See 33 V.S.A. § 5540(3) (court shall consider "likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time" (emphasis added)); cf. Mass. Gen. Laws ch. 210, § 3(c)(vi) (in determining whether best interests of child will be served by granting petition for adoption without requiring consent of persons named in § 2, court must consider whether parent will be able to provide proper care within reasonable period of time). For the reasons discussed above, that criterion  the most significant of those contained in § 5540  does not come into play in a situation such as the instant one. R.B. is not a parent, and has no residual parental rights to protect. See In re B.C., 169 Vt. 1, 13, 726 A.2d 45, 54 (1999) (grandmother's presumption that she retained residual parental rights by virtue of Massachusetts guardianship order, and that SRS had burden of demonstrating by clear and convincing evidence that those rights should be terminated, is doubtful, at best, given family court's authority to transfer guardianship of child upon finding of CHINS).
The family court examined the best interests of S.P. under § 5540, noting R.B.'s utter failure to protect the child, and her long history of thwarting efforts to protect her own daughters and grandson from the sexual abuse inflicted by her son. Plainly, the court was justified in terminating the guardianship and transferring custody to SRS in this case. Cf. In re A.S., 171 Vt. 599, 600, 762 A.2d 830, 831 (2000) (family court terminated grandmother's custodial guardianship and transferred custody to SRS without limitation as to adoption based upon finding that grandmother had failed to protect child from father's neglect and abuse). Such would be the case even if the State were required to show, which it is not, that R.B. would be unable to resume her guardianship duties within a reasonable period of time.
Affirmed.
NOTES
[*] Termination of parental rights had already taken place with respect to S.P.'s natural parents.