Filed 04/29/24

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-01117

| Daniel Shaffer v. Heartbeet Lifesharing Corporation, et al |
| --- |

# ENTRY REGARDING MOTION

Title:        Motion in Limine; Motion to Strike Regarding Comparative Negligence; & in the
Alternative, Opposition to Motion in Limine  (Motion: 11; 12)
Filer:        Alexander M. Dean; Richard J. Windish; David M. Pocius
Filed Date:   July 26, 2023; August 31, 2023

Plaintiff's First Motion in Limine is DENIED.

Defendant's Motion to Strike is DENIED.

This matter is a negligence and wrongful death claim brought by Daniel Shaffer ("Plaintiff") as administrator for his late son Jared Shaffer's ("Mr. Shaffer's") estate.[1]  Mr. Shaffer died at age 26 from undiagnosed and untreated testicular cancer.  Mr. Shaffer had multiple disabilities, including autism, epilepsy, obsessive compulsive disorder, and anxiety, which affected his ability to communicate and left him unable to live independently.  Mr. Shaffer, since turning 18, had lived in Vermont, at co-Defendant Heartbeet—a Therapeutic Community Residence and working farm. Heartbeet does not provide medical care to residents but instead contracted with co-Defendant Northeast Kingdom Human Services (NEKHS) to provide medical care to residents, including Mr. Shaffer.

In Plaintiff's First Motion in Limine, Plaintiff requests that Defendants' affirmative defense of comparative negligence be stricken and that the jury not be instructed on the issue of comparative negligence because Plaintiff, despite being Mr. Shaffer's co-guardian, had no legal duty to his son. Plaintiff also argues that, because Defendants never filed an indemnification action against Plaintiff or otherwise joined him personally, he cannot be personally liable for negligence.

---

[1]This Court has previously summarized many key facts in this matter in its Dec. 20, 2022 Entry Order.

Defendants Heartbeet and NEKHS oppose this Motion and have also filed a Motion to Strike Plaintiff's Motion in Limine. Defendants seek to strike the Motion in Limine as a "non-conforming summary judgment motion," arguing that Plaintiff was—in effect—requesting judgment as a matter of law on the issue of contributory negligence.

1. **Plaintiff's Motion Limine**

Parties may file motions in limine for preliminary rulings on the admissibility of evidence. *Nault v. Rocky Dell Builders, Inc.*, No. 1-1-13 Wmcv, 2014 WL 6852892, at *1 (Vt. Super. June 17, 2014). The trial court has broad discretion in ruling on motions in limine. See *id* (citing *Lamb v. Geovjian*, 165 Vt. 375, 379 (1996). The trial court may also reserve ruling on motions in limine until trial. See *id* (citing *State v. Clark*, 152 Vt. 304, 308 (1989)).

However, "the purpose in filing a motion in limine…is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters *which have no proper bearing on the issues in the case or on the rights of the parties to the suit.*" 2 Graham, Handbook of Federal Evidence § 103:8 (9th ed.) (quoting *Bridges v. City of Richardson*, 354 S.W.2d 366, 367 (Tex. 1962), emphasis added in Graham). Motions in limine should not be used to substitute for motions for judgment as a matter of law. *Nault*, 2014 WL 6852892 at *1 (citing 21 Wright & Miller, Federal Practice & Procedure: Evid. § 5037.18 (2d ed.) ("[C]aselaw provides ammunition against those who would use the motion in limine as a substitute for summary judgment or other peremptory ruling in civil cases."). Describing the narrow scope of motions in limine, the California Court of Appeal wrote:

> [M]otions in limine deal with evidence. May this particular document be admitted? May an expert witness testify to certain facts or conclusions? An in limine motion that seeks to exclude all evidence pertaining to part or all of a cause of action based on an argument that plaintiff lacks evidence to support part or all of the cause of action is but a disguised motion for summary adjudication.

*Johnson v. Chiu*, 131 Cal. Reptr. 3d 614, 618 (Cal. Ct. App. 2011) (quoting *R&B Auto Center, Inc. v. Farmers Group, Inc.*, 44 Cal. Reptr. 3d 426 (Cal. Ct. App. 2006) (Rylaarsdam, J., concurring)). Whereas a motion in limine is directed to establish the ground rules applicable at trial, a summary judgment motion "is a determination by the court concerning a case or aspect of a case made prior to trial that obviates the need for a trial of the matter." *Hercules v. AIU*, 784 A.2d 481, 500 (Del. 2001).

Here, Plaintiff is asking the court to "obviate the need for a trial on the matter" of Plaintiff's contributory negligence. See *Hercules*, 784 A.2d at 500. Plaintiff is asking the Court for a pre-trial judgment, as a matter of law, on his negligence; specifically, for a decision that he could not have been negligent. See, e.g., Pl.'s Reply at 2.[2] A motion in limine is an improper vehicle for such a request. See *Nault*, 2014 WL 6852892 at *1.

Similarly, here, both arguments raised by Plaintiff on Plaintiff's motion in limine improperly "address[] the substance of [Defendants'] claims, rather than evidentiary issues." See *id.* The Court will not decide the substantive issue of Plaintiff's contributory negligence in a motion in limine. See *Johnson*, 131 Cal. Reptr. 3d at 618 (Cal. Ct. App. 2011) (quoting *R&B Auto Center, Inc. v. Farmers Group, Inc.*, 44 Cal. Reptr. 3d 426 (Cal. Ct. App. 2006) (Rylaarsdam, J., concurring) ("To have the sufficiency of the pleading or the existence of triable issues of material fact decided in the guise of a motion in limine is a perversion of the process."))

As noted in more detail below, the factual and legal issues underlying this motion are ultimately substantive claims that will have to be developed at trial and cannot be decided on either evidentiary or strictly legal grounds. To the extent that Defendants have properly raised the comparative negligence defense, they may proceed against Plaintiff in this matter. Therefore, the Court **Denies** Plaintiff's motion in limine.

2. **Plaintiff's Motion in Limine as a Motion to Strike the Comparative Defense Claim**

Plaintiff's motion in limine effectively seeks to strike the affirmative defense of comparative negligence from Defendants' pleadings. Parties may make a motion to strike under V.R.C.P. 12(f) within 21 days of service of the pleading. The Court may also, upon its own initiative, at any time, "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." V.R.C.P. 12(f). Defendants first asserted this affirmative defense in their Answer, filed June 3, 2021. Thus, a motion to strike this affirmative defense should have been filed two years ago, by June 24, 2021. See V.R.C.P. 12(f). Although untimely, this motion

---

[2] Although Plaintiff states that he is not requesting summary judgment (e.g., Pl.'s Reply at 2), the Court looks to the relief sought, rather than how the motion is labeled, to determine the nature of the motion. See *Messier v. Bushman*, 2018 VT 93, ¶ 10 n. 2, 208 Vt. 261 (citing V.R.C.P. 8).

may still be considered by the Court because of the Court's power to strike a pleading on its own initiative. See *Lunsford v. United States*, 570 F.2d 221, 227 (8th Cir. 1977).[3]

However, motions to strike a defense are generally disfavored, and will be denied if the issues of fact or law are not adequately developed. *Lunsford*, 570 F.2d at 228.

> Generally, to prevail on a motion to strike an affirmative defense, Plaintiffs must establish that: (1) there is no question of fact that might allow the defense to succeed; (2) there is no substantial question of law that might allow the defense to succeed; and (3) they would be prejudiced by the inclusion of the defense. (citations omitted). It is generally held that "an affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, so long as it gives the plaintiff fair notice of the nature of the defense." See *Ryder ex. rel. SV v. Chestnut*, 2005 U.S. Dist. LEXIS 28518, *7 (D.Vt. Nov. 4, 2005) (internal citation omitted). "The function of Rule 12(f) is to expedite the administration of justice, and pursuant thereto a court will delete allegations that are not responsive, but an entire defense should not be eliminated unless it grossly violates the requirements of Rule 8 relating to the general rules of pleading." (citations omitted).

*MTA Metro-N. R.R. v. Buchanan Marine, L.P.*, 2006 WL 3544936, at *3–*4 (D. Conn. Dec. 8, 2006)

Plaintiff relies on two arguments to justify striking Defendants' affirmative defense: first, Plaintiff had no duty to Mr. Shaffer that could give rise to liability for negligence, and second, that Plaintiff as administrator of Mr. Shaffer's estate cannot be personally liable for negligence in the context of this action. If the Court were to accept either argument, Plaintiff could not be liable for negligence as a matter of law. However, both parties' filings show that there are disputed questions of fact and law that make a motion to strike the affirmative defense of comparative negligence inappropriate at this stage.

---

[3] V.R.C.P. 12 is "based on Federal Rule 12, with minor modifications." Reporter's Notes—V.R.C.P 12. "Federal cases interpreting the Federal Rules are an authoritative source for the interpretation of identical provisions of the Vermont Rules." Reporter's Notes—V.R.C.P. 1.

*A. Questions of fact*

Plaintiff argues that no set of facts can demonstrate that Plaintiff had a legal duty of care toward his son, and there are no sets of facts which could demonstrate that Plaintiff breached any duty of care. However, the facts underlying both duty and breach in this case are murkier than Plaintiff suggests. This Court has already noted the significant factual issues at the heart of this matter:

> The core dilemma for the parties is that there is very little information on which to foot or anchor any opinion about the timeline and development of Mr. Shaffer's disease in this case. All of the medical records associated with Mr. Shaffer's cancer come from his post-mortem examination. This autopsy appears to have been conducted primarily to establish Mr. Shaffer's cause of death but not with an eye to preserving or providing data on some of the historical origins or development of the cancer in Mr. Shaffer. Both sides note repeatedly that there is an overall lack of evidence and accuse the other of overreaching into speculation and unsupported testimony.

Entry Order, Dec. 20, 2022 at 3–4. This Court previously noted the factual dispute between the parties "as to whether Mr. Shaffer exhibited symptoms or indicia of the cancer." Entry Order, Feb. 27, 2023, at 2.

Additionally, the parties also dispute the extent to which Plaintiff was involved in Mr. Shaffer's medical care, particularly in his role as Mr. Shaffer's co-guardian. Plaintiff asserts that he and Mr. Shaffer's other co-guardian were not involved in Mr. Shaffer's healthcare. This statement is contradicted by Co-Guardian Gilberg, who refers to making decisions regarding Mr. Shaffer's treatment in her deposition. Gilberg Dep. 178:5–11. These disputed facts—how Mr. Shaffer's cancer progressed, what symptoms he may have exhibited, and what role Plaintiff, as his co-guardian, played in his treatment and ongoing care—are all critical to any analysis and determination of the issue of comparative negligence.

*B. Questions of law*

Plaintiff also argues that as a matter of law, regardless of the factual dispute regarding what care he may or may not have provided, he had no legal duty to Mr. Shaffer (and therefore could not

have breached a duty); and that he cannot be held personally liable for negligence when he is only joined in this action as the administrator of Mr. Shaffer's estate. As the filings from both parties indicate, these substantive legal issues remain in dispute, and any analysis will likely depend on the facts elicited at trial.

The parties dispute what duty, if any, Plaintiff—in his role as Mr. Shaffer's co-guardian—had regarding Mr. Shaffer's medical care. Plaintiff frames any potential duty attributable to him narrowly and suggests that he did not have an "affirmative duty to recognize symptoms requiring medical care," or to "ensure a certain type of medical care was provided during the short timeframe at issue." Defendants take a broader view of the statutory and common law duties of guardians, and view guardians as being obligated to act affirmatively for their ward's well-being.

Plaintiff was appointed co-guardian of Mr. Shaffer's person and property under new York's Surrogate's Court and laws pursuant to SCPA § 17-A. A guardian of the person is "responsible for caring for someone who is incapable of caring for himself or herself because of infancy, incapacity, or disability." Black's Law Dictionary, guardian (11th ed. 2019). A guardian, generally, is "[s]omeone who has the legal authority and duty to care for another's person or property, esp. because of the other's infancy, incapacity, or disability." *Id.*; see also *In re S.P.*, 173 Vt. 480, 482 (2001) (endorsing same definition). Thus, Plaintiff's appointment as co-guardian of Mr. Shaffer's person indicates he accepted some responsibility for Mr. Shaffer's care and had both the legal authority and duty to care for Mr. Shaffer. See *id.*

The documents governing Mr. Shaffer's guardianship state that, "pursuant to SCPA § 1750-b, the guardians are authorized and empowered to make all health care decisions with respect to the medical and dental needs of the ward and to render consent to any medical procedures which are necessary to the health and welfare of the ward unless the Court directs otherwise." [4] Plaintiff suggests that these provisions exist exclusively to empower guardians, but do not confer any legal

_____

[4]The Court notes that Jared's guardianship papers does not indicate whether Jared was capable of making his own medical decisions, leaving both "is" and "is not" in the text, such that the line reads, in full: "Ordered Adjudged and Decreed that the respondent is (is not) capable of making health care decisions on his (her) own behalf pursuant to SCPA 1750…" See Aff. Ex. 13 at 3. The effect, if any, is minimal because Plaintiff was granted a full guardianship over Mr. Shaffer and nothing in the guardianship order indicates either a limitation on the guardians' authority or reserves certain functions and details to Mr. Shaffer. Given however, that one of the disputed facts in this case is whether Mr. Shaffer was able to effectively communicate any pain or medical concerns with others, the Court makes no findings on the basis of the New York guardianship order other than to note the legal authority and responsibility given to the guardians.

duties upon them. This position is not supported by either case law or the purpose of a guardian. The nature of the duty created by this guardianship is clarified by the language of SCPA § 1750-b(4), which governed Mr. Shaffer's guardianship under SCPA § 1750. See SCPA § 1750-b(4). SCPA § 1750-b(4) confers on guardians the "affirmative obligation to advocate for the full and efficacious provision of health care…" for their wards. *Id.* Thus, when Plaintiff agreed to be Mr. Shaffer's guardian pursuant to this legal scheme, he undertook an affirmative obligation, a responsibility—not merely an empowerment. See SCPA § 1750-b(4).

This is supported by New York case law that posits a guardian is "fiduciary bound to the highest standards" to care out the "duty to protect those unable to care for themselves." *In re Mark C.H.*, 28 Misc.3d 765, 773 (NY Surrog. Ct. Apr. 21, 2010)( (quoting *S.B. Hurme & E. Wood, Guardian Accountability Then and Now: Tracing Tenets for an Active Court Role*, 31 Stetson L.Rev. 867, 871–72 (2002)). The basis for this duty is grounded in the substantial power that a guardianship bestows. When a guardian is appointed, the ward generally loses all rights to make their own determinations about their life. Id. at 775–77 ("The appointment of a plenary guardian of the person under 17-A gives that guardian virtually total power over her ward's life, including virtually all medical decisions . . . .").

This leads to the next question, which is the extent to which Plaintiff properly delegated his responsibility for Mr. Shaffer's medical care to Defendants. Plaintiff argues that Defendants accepted full responsibility for Mr. Shaffer's care by virtue of the contracts governing Mr. Shaffer's placement at Heartbeet and receipt of services through NEKHS. Defendants refute this, noting that Mr. Shaffer's co-guardians had the exclusive authority to request copies of his medical records and to make decisions regarding his treatment. This argument can be analyzed in one of two ways. First, to the extent Plaintiff is arguing that he delegated his fiduciary duties, the record does not support such a conclusion.

Generally, a guardian cannot delegate a fiduciary duty without prior consent of the court overseeing the guardianship. See, e.g., *In re Semer*, 2001 WL 36385313, at *1 (N.Y. Surrog. Ct. Dec. 19, 2001) ("In no event shall any determination herein be considered approval by this court of the delegation by its guardians of their fiduciary duties in the future without prior consent of this court."). Second, this argument, to the extent that it argues what the details of the parties' relationship were, pushes into factual territory as it would require a finding of not only what the

parties agreed to do but how medical care was handled and overseen between the parties. This, in turn, breaks down along the lines of the factual dispute about breach and causation in this case with the added question of whether Plaintiff had enough information or notice that would have triggered his fiduciary duty as overseer of Mr. Shaffer.

Plaintiff also argues that because he has not been joined in his personal capacity—only as estate administrator—he cannot be liable for negligence as a matter of law. Specifically, he contends it would be "inconsistent with Vermont's Wrongful Death statute" to permit a claim of comparative [negligence] against the Administrator of an Estate." Pl.'s Reply at 1. However, Plaintiff's argument on this point relies on a forecast that Vermont—which has never decided the issue—would follow New Hampshire, rather than the numerous other states that allow contributory negligence actions based on a beneficiary's negligence. See, e.g., 25A C.J.S. Death § 142 ("contributory negligence of a beneficiary is generally a bar to an action for death brought by or for the benefit of such beneficiary.") Plaintiff cites the New Hampshire Supreme Court's holding that the contributory negligence of a beneficiary did not reduce the beneficiary's recovery in a wrongful death action. *In re Estate of Infant Fontaine*, 519 A.2d 227 (N.H. 1986). Plaintiff suggests that Vermont's wrongful death statute is so similar to New Hampshire's that Vermont would be "highly likely" to follow the decision of the *In re Fontaine* court. Pl.'s Reply at 3. However, the two statutes differ in critical ways.

Vermont's wrongful death statute provides: "[t]he amount recovered shall be for the benefit of the spouse and next of kin, as the case may be and shall be distributed by the personal representative as hereinafter provided." 14 V.S.A.§ 1492. New Hampshire's statute, rather than providing that the amount recovered is for the spouse and next of kin (the beneficiaries), provides that the damages "shall become a part of the decedent's estate." The benefit of the proceeds of the wrongful death action accrue, in New Hampshire, to the decedent's estate—rather than being for the spouse and next of kin, as in Vermont. The wording of Vermont's statute is similar to other states which *have* found the contributory negligence of a beneficiary to reduce that beneficiary's recovery. See, e.g., *Hess v. Hess*, 758 So. 2d 1203, 1204–05 (Fla. Dist. Ct. App. 2000); *Shinaver v. Szymanski*, 471 N.E.2d 477, 482 (Ohio 1984). This includes New Hampshire prior to 1971, when RSA 556:14, governing wrongful death, was amended. See *In re Estate of Infant Fontaine*, 519 A.2d at 229.

This distinction is important because the language of Vermont and other states' statutes makes the spouse and next of kin the real parties in interest, not the estate or the decedent.

Therefore, it would be both inequitable and contrary to the legal realty to allow a spouse or next of kin to seek damages while escaping the statutory provisions allowing the defense for contributory actions to the underlying tort. Id. Since wrongful death actions are purely creatures of statute, the Court must follow the specific language selected by the legislature. *Quesnel v. Town of Middlebury*, 167 Vt. 252, 258 (1997). In this case, the legislature has chosen to make the spouse and next of kin the real parties in interest, and the Court must simply apply the relevant provisions and duties that the law allows for the defense of such actions.

Thus, Defendant's failure to join Plaintiff personally or file an indemnification action against him does not require the Court to strike the affirmative defense of contributory negligence as a matter of law. Given the submissions by the parties, the underlying questions of fat—like the issue of a co-guardian's duty—remains in dispute, and therefore this Court will not decide either via a pretrial motion to strike.

*C. Prejudice to plaintiff*

The burden is on the Plaintiff to show that he would be prejudiced by the affirmative defense, and he has not done so here. See *Buchanan Marine, L.P.*, 2006 WL 3544936, at *3. First, Plaintiff's motion to strike does not make a robust argument that he would be prejudiced by the affirmative defense, only that such a defense would be improper as a matter of law. Plaintiff argues that presentation of the affirmative defense "risk[s] prejudice and confusion," but does not state why. Second, the fact that Plaintiff has had "fair notice of the nature of the defense" weighs against granting the motion to strike. See *Buchanan Marine, L.P.*, 2006 WL 3544936, at *4. Regardless of whether Plaintiff has been joined personally, he has had notice, in his capacity as estate administrator, of this affirmative defense since Defendants' Answer was filed in June of 2021.

Based on the foregoing, Plaintiff's motion in limine is **Denied**.

3. **Defendants' Motion to Strike Plaintiff's First Motion in Limine**

Defendants argue that Plaintiff's motion in limine should be stricken as a non-conforming summary judgment motion. Like the corresponding federal rule, Vermont's Rule 12(f) allows for a motion to strike from "any *pleading*" "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." V.R.C.P. 12(f) (emphasis added). Under the express language of the rule, only pleadings are subject to motions to strike. *Sidney-Vinstein v. A.H. Robins Co.,* 697

F.2d 880, 885 (9th Cir. 1983). Rule 12(f) does not allow a party to strike a motion, and Defendants have not cited authority that would allow this Court to do so.

Whether the Court considers Plaintiff's motion a motion for summary judgment or a motion in limine does not change the underlying fact that a motion (regardless of type) is not a pleading for Rule 12(f) purposes. See, e.g., *O'Connor v. State of Nev.,* 507 F. Supp. 546, 548 (D. Nev. 1981), *aff'd,* 686 F.2d 749 (9th Cir. 1982) ("[A] Rule 12(f) motion to strike only concerns striking matters from pleadings…"); *Burlington N. & Santa Fe Ry. Corp. v. Dakota Missouri Valley & W. R.R.,* 347 F. Supp. 2d 708, 727 (D.S.D. 2004) ("Courts have consistently held that the various papers submitted in support of or in opposition to summary judgment motions are not pleadings as contemplated by Rule 12(f)."); *Hrubec v. Nat'l R.R. Passenger Corp.,* 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) ("Here, [plaintiffs] have moved to strike [defendant's] motion to strike and its memorandum in support of that motion. Neither of the offending items, however, constitutes a pleading. Thus, neither are candidates for Rule 12(f)…").

Because Plaintiff's motion in limine is not a pleading subject to a Rule 12(f) motion to strike, Defendants' motion to strike is denied.

## ORDER

Based on the foregoing, Plaintiff's Motion in Limine is **Denied** because Plaintiff has not shown that the facts and law preclude Defendants from succeeding with the defense or that Plaintiff would be prejudiced by the affirmative defense going forward. Defendant's Motion to Strike Plaintiff's Motion in Limine is **denied** because the Motion in Limine is not subject to V.R.C.P. 12(f).

Electronically signed on 4/29/2024 2:33 PM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge